Ralph Alan HARKER, Appellant,

v.

STATE of Alaska, Appellee.

No. 5232.

Court of Appeals of Alaska.

Dec. 10, 1981.

Mary E. Greene, James W. McGowan, Asst. Public Defenders, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

PER CURIAM.

Ralph Harker was convicted on his plea of no contest to a charge of armed robbery.[1] He appeals the superior court's denial of two motions: (1) alleging a violation of his speedy trial right under Criminal Rule 45, and (2) alleging a violation of the Posse Comitatus Act as the basis for suppressing material evidence seized from him.[2] He also appeals his sentence as excessive. We will discuss the facts as they are necessary to our determination of these three issues.

*The Rule 45 Motion:* Alaska Rule of Criminal Procedure 45(b), (c), and (d) require that a defendant charged with a crime be tried within 120 days of his arrest, but that certain periods shall be excluded in computing the time within which trial must commence. Harker was arrested on August 16, 1979. The parties stipulated that if he had not pleaded no contest, his trial would have begun on January 4, 1980. Thus, a total of 141 days elapsed between the arrest date and the trial date.[3] The superior court

---

1. Former AS 11.15.240, .295.

2. Harker properly reserved his rights to appeal the denial of these motions under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974), and *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978).

3. The date of the initial arrest is the proper date to begin counting for Rule 45 purposes. *See Cooksey v. State*, 524 P.2d 1251, 1257 (Alaska 1974); *Nickels v. State*, 545 P.2d 163, 165 (Alaska 1976). In counting the days of each interval, the first day is excluded and the last day is included. *See* Alaska R.Crim.P. 40(a); *Stobaugh v. State*, 614 P.2d 767, 770 n.3

found certain intervals of time excludable under Criminal Rule 45(d), so that Harker's right to be tried within 120 days was not violated. We agree, although our computations follow a different course than the trial judge's.

Harker concedes on appeal that nineteen days must be excluded under Alaska R.Crim.P. 45(d)(1) and (4). Specifically, he recognizes that the two days between his arrest in Arizona on October 16 and his waiver of extradition on October 18 are excludable under (d)(4) since for those two days "his presence for trial [could not] be obtained." *Spencer v. State*, 611 P.2d 1, 4 n.6 (Alaska 1980). Harker also recognizes that the seventeen days between his filing of pretrial motions and their determination are excludable under (d)(1), since 45(d)(1) explicitly excludes delay resulting from the pendency of motions to dismiss or to suppress evidence. *Id. See State v. Clouatre*, 516 P.2d 1189, 1190 (Alaska 1973).

■ We conclude that at least ten other days must be excluded as well, bringing Harker's trial date well within the requirements of Rule 45. Harker was released following his arrest in Fairbanks and he left Alaska approximately one month later. No complaint had yet issued. Before leaving Fairbanks, Harker, a soldier based at Ft. Wainwright, informed the police detective assigned to his case that he was required to report on October 1 to Ft. Huachuca, Arizona. Based on new information linking Harker to the crime, a complaint and arrest warrant issued on September 21.

The Fairbanks police immediately sent copies of the complaint and warrant to the Arizona civilian law enforcement and Ft. Huachuca authorities. Harker did report for duty at Ft. Huachuca as scheduled on October 1, although he was not arrested on the Alaska warrant until October 16.

We find that the ten-day period between September 21, the day the complaint issued, and October 1, when Harker reported to Ft. Huachuca, constitutes a delay resulting from the absence of the defendant within the meaning of Alaska R.Crim.P. 45(d)(4). Between September 21 and October 1, Harker was en route from one state to another. Although he was not attempting to avoid apprehension or prosecution, his whereabouts during that period could not be determined through due diligence. Since the Fairbanks police had Harker's word that he would arrive at Ft. Huachuca on October 1, a known location on a not distant date, due diligence did not require them to pursue avenues for locating Harker other than to send the arrest warrant copies to officials in Arizona. *See generally State v. Spencer*, 611 P.2d at 6–7 (police not required to use every available or imaginable means to locate a defendant).

Having concluded that September 21 to October 1 constitutes an excludable period under Alaska R.Crim.P. 45(d)(4), we must affirm the trial court's ruling on Harker's speedy trial motion.[4]

■ *The Posse Comitatus Motion:* Harker was arrested and searched on Ft. Wainwright grounds by an Army military police-

(Alaska 1980); *Nickels v. State*, 545 P.2d at 165; *Peterson v. State*, 562 P.2d 1350, 1359 n.13 (Alaska 1977). Given the state's concession that the defendant's initial arrest on August 16, 1979, began the 120–day period, it is unnecessary for us to determine whether the evidence obtained by the police on September 20, 1979, which resulted in the reinstatement of charges on September 21, 1979, was "not available to the prosecution at the time the defendant was ... initially arrested ...." Alaska R.Crim.P. 45(c)(1). *See Spencer v. State*, 611 P.2d 1, 4–5 (Alaska 1980).

The state concedes that the 120–day period commenced on August 17, 1979, and ran with certain periods excluded until the stipulated trial date January 4, 1980. We accept that

concession for purposes of this appeal. Consequently, it is unnecessary for us to decide whether the release of the defendant and the termination of prosecution for insufficient evidence to convict after an arrest based upon probable cause, tolls the 120–day rule where charges are thereafter reinstated based upon evidence unavailable to the authorities at the time prosecution was initially terminated. *Compare Peterson v. State*, 562 P.2d 1350, 1358 (Alaska 1977), with *Adams v. State*, 598 P.2d 503, 507 (Alaska 1979), and *Peterkin v. State*, 543 P.2d 418 (Alaska 1975).

4. We, therefore, need not consider other possible periods of excludable time.

man for a crime committed off-base and wholly unrelated to his military activity. He claims that the involvement of the military police in his arrest and search was a violation of the Posse Comitatus Act, 18 U.S.C. § 1385, and that, therefore the evidence seized and the statements taken at the time of his arrest should have been suppressed. The state contends that there was no violation and that, even if there was, no exclusionary rule should be applied.

The Posse Comitatus Act provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Although enacted in 1878 to limit allegedly excessive use of federal troops to preserve order and maintain the governments of Republican carpetbaggers in the southern states, the Posse Comitatus Act remains viable today.[5] Its apparent purpose is to protect the military from overuse by local civil law enforcement authorities. *See generally United States v. Walden*, 490 F.2d 372, 375–77 (4th Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974); *Wrynn v. United States*, 200 F.Supp. 457, 464 (E.D.N.Y.1961), quoting *Gillars v. United States*, 182 F.2d 962, 972 (D.C.Cir.1950). It also protects civilians from being subject to the exercise of regulatory or proscriptive military authority. *See generally United States v. Casper*, 541 F.2d 1275, 1278 (8th Cir. 1976).

The important first question for us is not whether in fact a violation of the act was shown in this case but whether, even if it were, an exclusionary rule should require the suppression of evidence and statements otherwise validly seized. Four courts have considered this question, and all concluded that an exclusionary rule is inappropriate. In *United States v. Walden*, 490 F.2d at 377, the court said that the usual considerations which require an exclusionary rule in fourth amendment cases were not present in a case involving a Posse Comitatus Act violation. First, the proscription against the use of the military in civilian law enforcement is far less clear and less widely known than, for example, the prohibition of the fourth amendment against unreasonable searches. Second, the act expresses a policy "for the benefit of the people as a whole, but not one that may fairly be characterized as expressly designed to protect the personal rights of defendants." Third, admission of the evidence of guilt does not require the court to condone "dirty business." Most important, the court said, it was not aware of widespread or repeated violations of the act. Should there be evidence of widespread or repeated violations in any future cases, the court would consider itself free to consider whether to adopt an exclusionary rule as a future deterrent. *State v. Danko*, 548 P.2d 819, 825 (Kan.1976), and *United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir. 1979), followed the reasoning of *Walden* and reached the same conclusion. Both courts said they would reconsider whether an exclusionary rule might be necessary in the future if presented with a pattern of frequent violations. *See also Burns v. State*, 473 S.W.2d 19, 21 (Crim.App.Texas 1971). The reasoning of these courts appears sound to us.

Harker has argued that Alaska Rule of Evidence 412 mandates a different conclusion in this state. Rule 412 provides in relevant part that:

Evidence illegally obtained shall not be used over proper objection by the defendant for any purpose except [under certain circumstances in perjury prosecutions].

In discussing the predecessor of Evidence Rule 412, former Criminal Rule 26(g),[6] the

---

5. Congress proposed amendments to the Posse Comitatus Act as recently as 1975. S. 1, 94th Cong., 1st sess. 435–36 (1975). *See generally* Note, The Posse Comitatus Act: Reconstruc-

tion Politics Reconsidered 13 Am.Crim.L.Rev. 703, 711 (1976).

6. Rule 26(g), Alaska R.Crim.P., was repealed by Supreme Court Order on August 1, 1979, the

supreme court noted that Alaska expresses the exclusionary rule more broadly than any other jurisdiction. *State v. Sears*, 553 P.2d 907, 909 (Alaska 1976).[7] Both *Sears* and the Commentary to the Alaska Rules of Evidence make clear that Rule 412 is directed at police conduct which violates constitutional guarantees. The Commentary, at 103 states that the purpose of the rule is to "breathe life into constitutional guarantees and to remove incentives for governmental intrusion into protected areas." In *Sears*, the court noted that the express intent of the majority of the drafters of Alaska R.Crim.P. 26(g) was to endorse the position of Justice Connor, dissenting in *Dimmick v. State*, 473 P.2d 616, 625 (Alaska 1970), that a criminal defendant may exclude a statement seized in violation of *Miranda* rights, even where he was not the victim of the violation; Justice Connor argued that the exclusionary rule should "close the courtroom door to evidence obtained by intentional violation of fundamental constitutional rights," *id.* at 629. *See State v. Sears*, 553 P.2d at 910–11.

There is no suggestion in *Sears, Dimmick*, or the Commentary to the Evidence Rules that the drafters of Criminal Rule 26(g) or Evidence Rule 412 envisioned that the rules would exclude evidence obtained in violation of a statute wholly unrelated to defendants' constitutional rights. We therefore find an exclusionary rule unwarranted in this instance.[8]

Because we have concluded that, even if the Posse Comitatus Act was violated in Harker's arrest he would not be entitled to have the evidence taken from him excluded, we need not reach the question whether a violation occurred in this case.

*The Sentence Appeal:* Harker pleaded no contest to armed robbery. He was accused of entering a Bag Boy store in Fairbanks, pointing a pistol at the cashier, and demanding money. The cashier gave him approximately $100 and stepped on an alarm button. Harker and his companion were arrested within the half hour. The pistol found in the car was unloaded, and Harker stated several times that the gun was unloaded when he went into the Bag Boy.

Harker was twenty-one at the time of the robbery and had been in the Army since the age of seventeen. He was trained as a truck driver and as an armorer and had received his GED through the military. His military record is neither exceptionally good nor exceptionally poor; he received four citations for minor infractions. He had no criminal record. A psychiatrist who interviewed him described his offense as "atypical of his general behavior," probably a result of personal turmoil and depression related to the break-up of a romance. He saw "no indication that Mr. Harker is an antisocial individual."

Harker committed the crime because he needed money to get to Anchorage where he could get an advance on his paycheck. He expressed considerable remorse for the crime. Although two of his friends were involved in the crime—one sold him a gun, the other drove the car on the evening of the crime—Harker tried to take all of the responsibility upon himself.

■ The superior court judge found that Harker's attitude and progress as of sentencing were good and that he was a dangerous offender [9] but not a professional criminal. The probability of rehabilitation was good, he estimated, and the need for isolation, low. In sentencing, the judge stressed the need to deter others. The

day the Alaska Rules of Evidence went into effect.

**7.** There is no federal counterpart of Alaska R.Evid. 412.

**8.** Additionally, the Posse Comitatus Act provides penalties for violations, which the fourth and fifth amendments, for example, do not. It might be argued that these penalties deter vio-

lations; however, there have never been any prosecutions under the act. *See Jackson v. State*, 572 P.2d 87, 90 n.9 (Alaska 1977).

**9.** The judge's finding that Harker was "dangerous" was apparently based entirely on his admitted commission of an armed robbery. *But see Mattern v. State*, 500 P.2d 228, 234–35 (Alaska 1972).

judge then stated that he had a practice of sentencing armed robbers to five years to serve in prison and that the lowest sentence he had ever given was four years to serve. Because of Harker's background, his educational opportunities, and the probability of his rehabilitation being higher than average, the judge dropped below his five-year standard in this case; he sentenced Harker to ten-years imprisonment, suspending six years.[10]

■ Harker argues that this sentence is excessive. The state contends it is not, pointing to one case in which a sentence of five-years imprisonment was affirmed as not clearly mistaken for a first-time armed robber. *Marks v. State*, 557 P.2d 1136, 1138 (Alaska 1976). Marks' crime was quite similar to Harker's, but, unlike Harker, Marks had a juvenile record and a substantial drinking and drug problem; the lengthy commitment was designed in part to ensure that he would get treatment. The court found him a danger to himself and society. *Id.* at 1137–38. Numerous other cases affirm sentences for armed robbery of five years to serve for defendants with backgrounds or records substantially worse than Harker's, or for crimes of actual, not just threatened, violence.[11] In the reported case most similar to this one, where an eighteen-year-old defendant with a history of drug abuse but no criminal record held up a drive-in with a gun, a sentence for armed robbery of three years to serve was affirmed. *Bibler v. State*, 568 P.2d 9 (Alaska 1977).

Appellant's strongest argument challenges the trial judge's use of a presumptive sentence of five years for armed robbery reduced here to four years for what the trial court no doubt considered "mitigating factors." While presumptive sentencing has been adopted by the legislature effective January 1, 1980, it does not apply to offenses committed before that date as this one was, and generally does not apply to first offenders. (The new code does, however, establish a presumptive six-year sentence for a first offender where a firearm is used. AS 11.41.500, 12.55.125(c)(1).) Statutory mitigating and aggravating factors, under the new presumptive sentencing scheme, create a range of three to nine years.

We are not convinced that the trial court in this case committed error in choosing one third of the fifteen-year maximum provided in former AS 11.15.240 as a target sentence in connection with the sentencing of one convicted of the enhanced offense of use of a firearm during the commission of a robbery. (AS 11.15.295 permits a sentence of from ten to twenty-five years.)

Where judges sentence in a vacuum considering only the facts surrounding a particular crime and a particular defendant, there is a substantial risk that like defendants will receive substantially disparate sentences. This raises legitimate questions about the fairness of the administration of justice. The danger is greatest in this type of case where the legislature has provided a range of sentences from probation to twenty-five years.

Where target sentences are chosen there is a greater likelihood that a judge will consider all of his sentences in imposing each one and that disparity will be based upon relevant differences between individuals sentenced. Of course a target sentence is a beginning and not an end and, as such,

---

**10.** The court must consider the entire sentence, including the suspended period. *Andrews v. State*, 552 P.2d 150, 152 (Alaska 1976). Ten years is the prescribed statutory minimum. AS 11.15.295. The supreme court had held that a portion of that ten years may be suspended. *Deal v. State*, 587 P.2d 740, 741 (Alaska 1978).

**11.** *See, e.g., Self v. State*, 596 P.2d 24 (Alaska 1979) (five years for defendant with lengthy juvenile record, on parole from prior armed robbery conviction); *Rice v. State*, 589 P.2d 419 (Alaska 1979); *Parks v. State*, 571 P.2d 1003 (Alaska 1977) (seven years with two suspended for robbery; defendant had two prior felonies, and many misdemeanor convictions); *Holloway v. State*, 535 P.2d 467 (Alaska 1975); *Bradley v. State*, 535 P.2d 1031 (Alaska 1975).

it must be evaluated against each defendant's individual circumstances and the circumstances of the crime in the light of the *Chaney* criteria.

We are satisfied that the trial court gave sufficient attention to any relevant special circumstances of this defendant and that a ten-year sentence with six years suspended is not clearly mistaken.

The conviction and sentence are AFFIRMED.