# STATE OF FLORIDA v. SEARS
## Case No. 85-2320-CF
Fourth Judicial Circuit, Duval County

August 15, 1985

### APPEARANCES OF COUNSEL

**Cheryl Peek** for defendant.

**Courtney Johnson** for plaintiff.

### OPINION OF THE COURT

LOUIS SAFER, Circuit Judge.

The defendant filed a Motion to Dismiss and a Motion to Suppress, both based on investigatory tactics claimed to be in violation of 18 U.S.C., Section 1385 [18 USCS § 1385], commonly referred to as the "Posse Comitatus Act."

A hearing was held at which the Court heard testimony of two witnesses called by the defendant and one called by the State.

The defendant called as witnesses Mr. Dorsey and Mr. Knutson, both of whom identified themselves as special agents in the Naval Investigative Services (NIS). NIS is primary investigative branch of Navy and investigates all felony type crimes. As NIS agents, both are

civilians employed by the Department of the Navy; both have offices at Naval Air Station; both are provided an official vehicle for their use. Mr. Dorsey testified that he was aware of the Posse Comitatus statute; the question was not asked of Mr. Knutson.

Neither of these witnesses has ever been deputized by the Jacksonville Sheriff's Office.

For about one year, a joint task force operated in this area, which was a combined effort of the Department of the Navy, Office of the Sheriff and State Attorney's Office, to identify sellers of narcotics to Navy members and employees of the Navy. Numerous arrests were made as a result of the efforts of the task force.

In this case, a person was picked up for drug possession in a gate search. He agreed to assist NIS by becoming a confidential informer. The CI mentioned the name of defendant to NIS. Defendant was unknown to NIS prior to this.

The CI was introduced to Detective Bennett of the Jacksonville Sheriff's Office. The CI introduced Detective Bennett to defendant.

Detective Bennett made two buys from the defendant, as alleged in the information. The buys occurred off the Naval base.

In connection with the buys, NIS provided the money and three agents who participated by providing surveillance and backup.

Following the buys, NIS agents Dorsey and Knutson escorted defendant from his office at Naval base to their office at the Naval base. They obtained a statement from defendant and took him to the Jacksonville Police Memorial Building, where he was arrested by an investigator for the Jacksonville Sheriff's Office.

Both witnesses acknowledge that Detective Bennett was the lead detective in the case.

The State's witness was Detective Bennett who identified himself as the investigator in the case who purchased the drugs from the defendant.

Based upon that testimony, it is the contention of the defendant that the activities of the NIS agents were in violation of the aforementioned federal statute. The defendant concedes that it is possible for there to be some spirit of cooperation between the military authorities and civilian authorities with respect to control of crime that affects both, but claims in this case there was the pervasiveness of federal authority which violated the spirit and the intent of the law. Defendant urges the Court, as punishment to the State for its alleged violation of the federal

statute, to use its inherent power of the Court in granting both of the motions.

## The Federal Statute

The law set forth in 18 U.S.C. Section 1385 [18 USCS § 1385], provides as follows:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws will be fined not more than $10,000 or imprisoned not more than two years or both.

Posse Comitatus is defined in Black's Law Dictionary as follows:

> The law or force of the county. The entire population of a county above the age of 15, which a sheriff may summon to his assistance in certain cases; as to aid him in keeping the peace, in pursuing and arresting felons, etc.

## Attempting to Understand the Statute

I. QUERY: Does the failure of the federal code to include Navy and Marines mean that activity by members of those branches of the Services would not come under the Act?

The case of *United States v. Walden*, 490 F.Rep.2d 372 (4th Circuit, 1974) holds that the failure to include the Navy and Marines in the text of the Posse Comitatus Act prohibiting the use of any Army or Air Force personnel to enforce civilian law does not indicate congressional approval of use of Navy or Marine personnel to enforce civilian laws for act is applicable to all of the armed services. In addition, Secretary of Navy Instructions 5400.12 regards the Posse Comitatus Act as a statement of federal policy to be followed by Department of Navy.

II. QUERY: What is the purpose of the Act?

Several cases have attempted to explain the Act. All agree that "the policy that military involvement in civilian law enforcement should be carefully restricted has deep roots in American history". *Walden*

The Posse Comitatus Act was designed to prohibit the use of military personnel as agents for the enforcement of civil law. *People v. Burden*, 288 NW 2d 392 (Mich. App., 1979).

The legislative purpose of the Posse Comitatus Act is to preclude the direct active use of federal troops from assisting local law enforcement officers in carrying out their duties. *Wrynn v. U.S.*, 200 F.Supp. 457 (ED N.Y., 1961), *Gillars v. U.S.*, 182 F.2d 962 (D.C. Cir., 1950).

The senators who drafted and debated the bill and President Hayes who signed the bill into law, were of the belief that 18 U.S.C. Section 1385 [18 USCS § 1385] made unlawful the use of federal military troops in the active role of direct law enforcement or execution of process. *U.S. v. Red Feather*, 392 F.Supp. (DSD, 1975).

Enacted in 1878 to limit allegedly excessive use of federal troops to preserve order and maintain the governments of Republican carpetbaggers in the southern states, the Act remains visible today. Its apparent purpose is to protect the military from overuse by local civil law enforcement authorities. It also protects civilians from being subject to the exercise of regulatory or presumptive military authority. *Harker v. State*, 637 P.2d 716, 719 (Alaska App. 1981).

The statute is limited to deliberate use of armed forces for the primary purpose of executing civilian laws more effectively than possible through civilian law enforcement channels, and . . . those situations where an act performed primarily for the purpose of insuring the accomplishment of the mission of the armed forces incidentally enhances the enforcement of civilian law do not violate the statute. *Furman, Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act*, 7 Mil.L.Rev. 85, 128 (1960).

III. QUERY: What are some things the military can do that would not be in violation of the Act, and what activities are prohibited by the Act?

Passive activities of military authorities which incidentally aid civilian law enforcement are not precluded. Considered passive which might indirectly aid law enforcement are:

(1) Mere presence of military personnel under orders to report on the necessity for military intervention;

(2) Preparation of contingency plans to be used if military intervention is ordered;

(3) Advice or recommendations given to civilian law enforcement officers by military personnel on tactics or logistics;

(4) Presence of military personnel to deliver military material, equipment or supplies, to train local law enforcement officials on the proper use and care of such material or equipment, and to maintain such material or equipment;

(5) Aerial photographic reconnaissance flights and other activities.

Considered as taking an active role which is prohibited are the following activities:

**45**

(1) Arrest

(2) Seizure of evidence

(3) Search of a person

(4) Search of a building

(5) Investigation of crime

(6) Interviewing witnesses

(7) Pursuit of an escaped civilian person

(8) Search of an area for a suspect and other like activities

*United States v. Red Feather*, 392 F. Supp. 916 (1975).

IV. QUERY: Would it be a violation of the Posse Comitatus Act for military and civilian authorities to cooperate in a joint task force concerning drug transactions?

In 8 M.L.R. 2283, the case of *United States v. Brown*, decided by N.C.M.R. April 30, 1980, is reported. Brown was apprehended by a team of military and civilian police on charges of trafficking large quantities of marijuana. Accused contended the apprehension violated the Posse Comitatus Act. The accused and the information were both Marines and the negotiations were conducted at a barracks on base. It was held that the Posse Comitatus Act does not proscribe joint investigations where both jurisdictions had their own interest in the matter and that the military had a legitimate interest in deterring the use of marijuana by service members. It was further held that the necessary predicate to show violation of the Act, namely, that military was motivated by the objective to aid in the execution of civilian law, was lacking in the case.

V. QUERY: Is it within the authority of NIS agents to provide information to State officials?

In the case of *State v. Maier*, 366 So.2d 501 (Fla. 1st DCA, 1979), the official duties of special agents as investigative officers for the United States Navy are outlined. That case describes the difference between command investigators and a special agent. The opinion finds that an NIS special agent is invested with responsibility for investigation of major criminal offenses, defined to include offenses against State laws as well as minor criminal offenses which have aspects involving narcotics, dangerous drugs, or controlled substances. Therefore, in *Maier* the appellate court held that the agent was acting properly within the scope of his duties in receiving information from a confidential informant, and in making investigative referral to State authorities.

46

The case further cites language from *U.S. v. Brouillette*, 478 F.2d 1171, 1177 (C.A. 5th 1973) to wit:

"After all, under the system of federalism, there is room for dual State-Federal activity. Federal officials often refer information they have received to State officials for possible prosecution. . . ."

VI. QUERY: Assuming that there was a violation of the federal statute, does that require suppression of the evidence?

In *State v. Nelson*, 260 S.W.2d 629 (S.Ct. N.C., 1979), defendants contended that surrender of evidence by military to civilian authorities violated the Posse Comitatus Act and that the evidence should therefore have been excluded. The Court held that a violation of the act would not call for invocation of exclusionary rule citing *U.S. v. Walden*, 490 F.2d 374 (4th Circuit, 1974) cert. denied, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed. 760.

This same conclusion was reached in *Harker v. State*, 637 P.2d 716 (Court of Appeals of Alaska, 1981) wherein it was held that a violation of the Posse Comitatus Act allegedly occurring in defendant's arrest on military base did not entitle him to application of exclusionary rule to evidence taken from him during such arrest. In *Harker*, the defendant service man was arrested on the base by military police for a crime committed off base and wholly unrelated to his military activity.

In *Hubert v. Oklahoma*, 504 P.2d 1245 (OKLA. CR., 1972), defendant argued that agents of the Criminal Investigative Division (CID) at Ft. Sill were incompetent to testify as witnesses by virtue of the federal prohibition against them acting as a posse comitatus as provided in 18 U.S.C. Section 1385 [18 USCS § 1385].

The pertinent facts recited in the opinion are: Skaggs, Teppe and Holt were working as undercover narcotics agents with CID assigned to Ft. Sill. On January 11, 1972, Skaggs and Teppe went to a building on military reservation to contact Benocki, a Ft. Sill soldier, who had been selling them drugs. They picked up Benocki, who directed them to a house in Lawton, Oklahoma. Benocki went into the residence. A short time later, Benocki came back to the car and they all went into the house. Benocki introduced them to the defendant and then purchased two "lids" of marijuana from the defendant, paying him $30.00.

Detective Rutledge is a Lawton law enforcement officer. He was contacted by Holt on January 11, 1972, and met with Skaggs, Teppe and Holt in the CID office. He and Holt followed Skaggs, Teppe and Benocki to the Lawton residence and then followed them back to Ft. Sill. Detective Rutledge was given two baggies from Skaggs and Teppe (being the bags purchased from defendant).

The evidence showed that the Lawton law enforcement authorities did not summon the military agents' assistance. To the contrary, Detective Rutledge was contacted by CID Agent Holt. The agents were investigating a soldier in Ft. Sill from whom they had previously purchased narcotics and proceeded to determine the source of supply. The soldier led the agents to a location outside of their military jurisdiction. The Court held that at that time, the agents assumed no greater authority than that of a private citizen.

The trial court held that CID agents were not incompetent to testify as witnesses. Affirmed on appeal.

In *Walden*, the defendants were convicted of a violation of federal gun laws. The bulk of the government's proof of their guilt was the product of an undercover investigation carried out in large part by several Marines at the request of a Special Investigator of the Alcohol, Tobacco and Firearms Division of the U.S. Treasury Department. The Court found this did not violate the Posse Comitatus Act, but did violate military regulations.

Because this case presented the first instance of which the Court was aware in which there was a claim of illegal use of military personnel, the Court declined to impose the extraordinary remedy of an exclusionary rule at the time, but suggested that should there be evidence of widespread or repeated violations in any future case, the exclusionary rule may be required as a deterrent.

A contrary conclusion was reached in *Burden*, supra, wherein it was held that use of Airman Hall in an investigation of drug trafficking violated the Posse Comitatus Act and Hall could not testify at the trial. It was contended by the State that the testimony of the airman should not have been excluded because the State of Michigan had declined to adopt suppression of evidence as a remedy for unlawful police conduct in situations involving violations of Michigan statutes. The Court held it was bound by federal policy when interpreting a federal statute, citing *Lee v. Florida*, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.1166 (1968) wherein the U.S. Supreme Court required exclusion of illegal evidence obtained in violation of the Federal Communications Act.

A dissenting opinion in *Burden* found no violation of the Act, finding that in cooperating with and assisting the civilian police agency, Hall was not acting as a member of the military, but as a civilian.

VII. QUERY: What criteria has been used by courts in determining if there has been a violation of the Act?

*Burden*, supra

The majority opinion found that Hall, a member of the U.S. Air Force, received compensation that was not monetary (criminal charges pending against him would be dropped and his aid would bear on a decision of the Air Force whether to treat him as "high risk" with regard to separate Federal drug charges), and this was sufficient to make the Air Force a willing participant in Airman Hall's undercover assistance to the State Police.

The majority found that use of one military personnel as an undercover agent for civilian authorities is a violation of the Act.

The Court declined to follow the standard stated in *U.S. v. McArthur*, 419 F.Supp. 286, 194 (DC ND, 1976), under which standard there would have been no violation of Posse Comitatus Act.

The *McArthur* court stated the question before it as whether military personnel were used by civilian law enforcement authorities "in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively."

The dissent in the case found no violation because Hall was not acting as a member of the military. His military status was merely incidental to and not essential to his involvement with the civilian authorities. He was not acting under military orders. He did not exercise either explicitly or implicitly any military authority. Moreover, Hall was not a regular law enforcement agent of the military. The assistance rendered by Hall was in no way different from the cooperation which would have been given by a private citizen offered the same opportunity to avoid criminal prosecution. The dissent makes sense to me and seems more compatible with Florida law (*Maier*).

*United States v. Red Feather*, 392 F.Supp. 916 (DC SD, 1975)

The defendants in this case were charged with interfering with law enforcement officers engaged in the lawful execution of their duties in connection with the takeover of the village of Wounded Knee. The issue was whether certain activities of the Department of Defense and military personnel violated the law as government had burden of proving beyond reasonable doubt that the law enforcement officers were engaged in lawful performance of their duties.

This decision concludes that 18 U.S.C. Section 1385 [18 USCS § 1385] may be violated only through the *direct active use of troops for purpose of executing the laws*. This conclusion of law means that any evidence of the use of Army or Air Force material, supplies, or equipment of any type or character by U.S. Marshalls as agents of FBI

to execute the laws during the occupation of Wounded Knee *is not unlawful* conduct under 18 U.S.C. Section 1385 [18 USCS § 1385].

*United States v. Jaramillo,* 380 F.Supp. 1385 (1974)

This was a prosecution for obstructing law enforcement officers lawfully engaged in lawful performance of duties incident to civil disorder, based on defendant's alleged attempt to enter an occupied village (Wounded Knee) on Indian reservation while U.S. Marshalls and FBI agents were containing occupiers during negotiation. Judge Urbom held that the government failed to carry its burden of proving that actions of Marshalls and FBI agents were lawful in view of material contributions of military personnel.

Issue was whether the involvement of the military establishment *was so substantial that it rendered the presence of U.S. Marshalls and FBI agents* unlawful, because military activity was in violation of 18 U.S.C. Section 1385 [18 USCS § 1385].

Army's furnishing of material and equipment to FBI agents and U.S. Marshalls in connection with civil disorder standing alone, did not violate statute.

Army and Air Force officers were present on the scene, placed restrictions on use of armored personnel carriers, made recommendations on shift of shooting policy, advised about appropriate method of negotiations, conducted aerial reconnaissance.

The Judge concluded as a factual matter (as opposed to *U.S. v. Banks,* where it was decided as matter of law) that there was reasonable doubt that the law enforcement officers were lawfully engaged in the lawful performance of their official duties.

However, after announcing acquittal of defendant, the opinion adds that "this Court is not finding that the actions of the FBI agents or the U.S. Marshalls were unlawful or that anyone violated 18 U.S.C. Section 1385 [18 USCS § 1385], the Posse Comitatus statute."

The decision seems to hold that notwithstanding the lack of a violation of the Posse Comitatus Act, there was a pervasiveness of federal military authority (military personnel, military vehicles, military management) as to render the conduct of the U.S. Marshalls and FBI agents as not being lawful.

*McArthur,* supra

Defendants were indicted for attempting to interfere with U.S. Marshalls and FBI agents during civil disorder. The issue was whether prosecution met its burden of proving beyond a reasonable doubt that

50

the law enforcement officials were acting lawfully at time of the alleged interference. Defendants urge that they were not so lawfully engaged because they received assistance in violation of the Posse Comitatus Act.

It is interesting to note that the evidence as to the Posse Comitatus issue was the same facts, by stipulation, considered by Federal Court Judges Nichol, Urbom, and Bogue, each of whom interpreted the evidence and the application of the federal statute differently. Judge VanSickle, who wrote the *McArthur* opinion, found the reasoning in the *Red Feather* and *Jaramillo* cases unsatisfactory.

As described by Judge VanSickle:

"Judge Bogue analyzed the evidence to find whether there was a 'direct active use' of any unit of federal military troops of whatever size, even if it be one single soldier. He found no evidence of such direct, active use. He found, therefore, that the evidence offered was peripheral, not relevant and denied its admission."

Judge Urbom analyzed the evidence to determine whether a "use of any part of the Army or Air Force *pervaded* the activities of the U.S. Marshalls and FBI agents." (emphasis added)

Judge Van Sickle found Judge Urbom's analysis too vague a standard and Judge Bogue's analysis is too mechanical.

Judge VanSickle reasons that the mandate against "use" of part of the Army and Air Force to "execute" the law implies an authoritarian act. Therefore, he concludes that the feared use which is prohibited by the Posse Comitatus statute is that which is *regulatory, proscriptive,* or *compulsory* in nature and causes citizens to be presently or prospectively subject to regulations, proscriptions or compulsories imposed by military authority (emphasis added). A footnote states "The inspiration for the language may be found in the decision of Chief Justice Burder in *Laird v. Tatum*".

So, in *McArthur*, the standard applied is this:

Were Army or Air Force personnel used by the civilian law enforcement officers at Wounded Knee in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive or compulsory in nature, either presently or prospectively?

Judge VanSickle answered negatively.

Thus, there seems to be three tests applied by different federal courts:

**51**

(1) Direct active use of military (*U.S. v. Red Feather*).

(2) Pervasiveness of military presence (*U.S. v. Jaramillo*).

(3) Regulatory, proscriptive or compulsory conduct of military (*U.S. v. McArthur*).

VIII. QUERY: What are the issues raised by defendant's motions in this case?

1. Was the CI a member of the military for purposes of the Posse Comitatus Act?

2. Did the furnishing by NIS of money, backup personnel, automobiles violate the Posse Comitatus Act?

3. Did the detention of defendants by NIS agents on the Naval base and their obtaining statement by him violate the Posse Comitatus Act?

4. If Posse Comitatus Act was violated, what relief is defendant entitled to?

## Conclusions

1. There is no testimony that the CI was a member of the military investigative force or that he was acting under military orders or exercising any military authority. The Court concludes he was cooperating with the local law enforcement agency as a private citizen. The CI was not contacted by local law enforcement agencies seeking his help; his name was provided by NIS. The Posse Comitatus Act prohibits the local law enforcement agency to summon to its assistance members of the armed forces. The uncontradicted testimony is that the CI was introduced to local law enforcement by NIS. To find this a violation of the federal law would require an interpretation of the Act that was never intended and would mean there can be no cooperation between the military and state agencies to combat illegal drug sales and use. *Maier holds to the contrary.*

2. NIS providing backup personnel, use of automobiles and providing money for the purchase, is not a violation of the Act. Backup personnel did not take an active role in the sale. At worst, it would be providing material which has been held not to be a violation of the Act.

3. If any violation occurred, it was probably in the detention of defendant by NIS and obtaining a statement, under the *Red Feather* theory. Even if such violation occurred, it would not be so serious as to require dismissal of the case. I do not know whether the statement was taken for the benefit of the Sheriff's office or whether it was taken for

52

the benefit of NIS in connection with its own investigation of drug use and sales on the base. I will reserve ruling on the Motion to Suppress as to such a statement. If the State intends to use the statement, I will hear additional testimony. Other.than this statement, I find nothing subject to possible suppression.

4. In *Walden* the Judge determined that he was not going to invoke the exclusionary rule because there was no showing that the law was being consistently broken and there was no basis for applying the exclusionary rule since a federal constitutional right was not involved. In *Lee* the U.S. Supreme Court suppressed evidence as punishment. I am not aware of such widespread use of military personnel to enforce State law that requires punishment to the State. As indicated above, the only sanction I will consider is suppression of the statement taken by NIS on the Naval air base property. At this point, I have not determined whether there are grounds for suppression.

In reaching these conclusions, I have attempted to analyze the reasons for the Posse Comitatus Act and its applicability to this case.

The Act resulted primarily from southern outrage at the use of federal troops in the South, following the Civil War, to enforce the law and to support the new carpetbag government. Thus, the prohibition for civil authorities to use military forces to enforce civil law. This is different from the instant case wherein there is cooperation between military and local government in trying to suppress drug crime that adversely affects both civilian and military populations.

The leading cases of *Jamarillo, Red Feather* and *McArthur* all arose from a factual situation where the military had been called in to protect against civil disorder. As previously stated, three different federal judges found different reasons to reach a conclusion that such use of the military required a judgment in favor of defendant.

I find nothing in the testimony from which it can be concluded that the action of the NIS agents amounted to:

(a) regulatory, proscriptive or compulsory conduct; or

(b) was pervasive in that they ran the show; or that the local law enforcement agencies took orders from them; or that NIS agents were so influential that local law enforcement agencies made decisions based upon their advice and counsel; or

(c) direct active use of military, unless the statement taken by NIS can be so considered. Even if I were to so find, I do not consider myself bound by the theory of *Red Feather*.

Based upon the testimony presented, I find that the Posse Comitatus

Act is not applicable to this case. I further find that no constitutional rights of the defendant have been violated.

Accordingly, I find no basis to grant the relief sought by defendant.

After doing the research necessary to reach the stated conclusion, the Court was advised that Congress passed a law in 1981 which gives additional insight into legislative intent on the subject of cooperation of the military and State law enforcement agencies.

10 USCA contains Chapter 18 entitled "Military Cooperation with Civilian Law Enforcement Officials". It states in part:

*Section 371. Use of information collected during military operations*

Information collected during normal course of military operations that may be relevant to a violation of any Federal or State law may be provided to civilian law enforcement officers.

*Section 372. Use of military equipment and facilities*

Military may, in accordance with other applicable law, make available any equipment to any Federal, State or local law enforcement official for law enforcement purposes.

*Section 375. Restriction on direct participation by military personnel*

Provision for assistance to any civilian law enforcement official does not permit direct participation by a member of the military in an interdiction of a vessel or aircraft, a search and seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

The Court believes that the intent of Congress as expressed in this Act is to encourage the type of military cooperation that occurred in this case.

ORDERED AND ADJUDGED that the Motion to Dismiss is denied.

FURTHER ORDERED AND ADJUDGED that a ruling on Motion to Suppress is reserved.