NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN W. PLETCHER IV,<br><br>          Appellant,<br><br>    v.<br><br>STATE OF ALASKA,<br><br>          Appellee. | Court of Appeals No. A-11492<br>Trial Court No. 3AN-09-14153 CR<br><br>O P I N I O N<br><br>No. 2435 — November 21, 2014 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Allen F. Clendaniel and Carolyn Y. Heyman-Layne, Sedor, Wendlandt, Evans & Filippi, Anchorage, for the Appellant. Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

The defendant in this case was a former patient at an alcohol abuse treatment center. One morning he returned to the treatment center, and he was visibly

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

intoxicated. When staff members asked him if he had been drinking, the defendant drove off in his motor vehicle.

The clinical director of the treatment center called the police to report that an intoxicated driver had just left the premises. The director gave the police a description of the vehicle, but she did not identify the driver, nor did she explain the driver's relationship to the treatment center.

This phone call led to a traffic stop — and, ultimately, to the defendant's conviction for driving under the influence.

In this appeal, the defendant argues that when the director made the phone call to the police, she violated federal law that protects the privacy of patients receiving drug and alcohol treatment. The defendant then argues that the remedy for this purported violation of federal law should be suppression of all the evidence against him.

For the reasons explained in this opinion, we conclude that the director did not violate federal law when she called the police, and we further conclude that the ensuing investigation and prosecution of the defendant for driving under the influence was consistent with federal law.

*Underlying facts*

On the morning of December 10, 2009, John W. Pletcher IV drove to the Clitheroe Center located at Point Woronzof, near the Anchorage airport. This is a residential substance abuse treatment facility run by the Salvation Army.

Pletcher was known to the staff at Clitheroe because he had recently been a residential patient there. However, at the time of this incident, Pletcher had transferred to an outpatient program at a Salvation Army halfway house.

Pletcher showed signs of being intoxicated. When the staff asked him if he had been drinking, Pletcher ran outside into the parking lot. Two Clitheroe employees followed Pletcher outside, and they heard a car start up. One of these employees, Robert Marx, took note of Pletcher's vehicle as it drove off — a red and white Land Rover with Alaska license plate DNK 265. Using a walkie-talkie, Marx relayed this information to the clinical director of Clitheroe, Brie David.

Ms. David then called the Anchorage airport police (the closest police agency) to report a suspected drunk driver. David identified herself as a Clitheroe employee, she explained that an intoxicated driver had just left the Clitheroe premises, and she gave the description of the vehicle. But David did not identify Pletcher as the driver, nor did she reveal that the driver had been a Clitheroe patient.

Because the content of Ms. David's conversation with the police dispatcher plays such a prominent role in Pletcher's argument on appeal, we include a transcription of that conversation in this footnote. [1]

---

[1]  *Police Dispatcher*:  Airport dispatch.
*Ms. David*:  Oh, hi.  This is Brie David with Clitheroe.
*Dispatcher*:  Uh-huh.
*David*:  And we had a person come out here today that has been drinking.
*Dispatcher*:  Uh-huh.
*David*:  And he just left in his vehicle.
*Dispatcher*:  Uh-huh.
*David*:  He's in a red and white Land Rover.
*Dispatcher*:  Hold on.  Can I put you on hold one second?
*David*:  Yes.
*Dispatcher*:  (background conversation)  Okay, go ahead.
*David*:  He's in a red and white Land Rover, and the license plate number is DNK 265.
*Dispatcher*:  How long ago did he leave?
*David*:  (to an unidentified person on her end)  How long ago did he leave?
*Unidentified Speaker*:  (indiscernible)
*David*:  (to the dispatcher)  He's just going down the road.

(continued...)

Airport police officers responded to this call. They located a Land Rover coming from the direction of Point Woronzof, and they observed that this Land Rover had no front license plate, so they performed a traffic stop. (State law requires that a car's license plates be displayed at both the front and the rear. [2])

When the police asked the driver for his operator's license, the driver produced a license that identified him as John W. Pletcher. Pletcher was the sole occupant of the Land Rover. There was an empty bottle of vodka underneath a blanket on the passenger seat.

Pletcher's eyes were bloodshot, and his speech was noticeably slurred. He performed poorly on the horizontal gaze nystagmus test and one other field sobriety test, and he stated that he "could not" perform a third field sobriety test. The police then arrested Pletcher for driving under the influence. A subsequent breath test showed that Pletcher's blood alcohol content was .180 percent (more than twice the legal limit).

---

[1] (...continued)
*Dispatcher*: And tell me your name really quickly.
*David*: [gives and spells her name]
*Dispatcher*: Call — call-back number?
*David*: [gives her number]
*Dispatcher*: We'll get somebody on it.
*David*: Thank you.
*Dispatcher*: Okay. Bye.
*David*: Bye.

[2] *See* AS 28.10.161(a) (the State of Alaska issues two license plates to all passenger cars), and AS 28.10.171(a) (when two license plates are issued to a vehicle, one must be attached in front and the other in the rear).

Because Pletcher had two prior convictions for driving under the influence within the preceding ten years, the State took Pletcher's case to the grand jury, seeking an indictment for felony driving under the influence. [3]

Both Marx and David testified at the grand jury. Neither of them identified Pletcher during their testimony, nor did they mention the fact that Pletcher had received treatment at Clitheroe. Instead, they described their contact with "an individual" on the Clitheroe premises — an individual who was noticeably intoxicated, and who left the premises in his motor vehicle.

(During his testimony, Robert Marx mentioned the fact that the individual in question "was known to us", and Marx implied that he personally had had prior contacts with this individual. But Marx never identified the context in which this "individual" was known to him or the other people at Clitheroe.)

The testimony identifying Pletcher as the driver of the vehicle (and confirming his intoxication) was given by a police officer who participated in the traffic stop.

The grand jury indicted Pletcher for felony driving under the influence. Following a jury trial, Pletcher was convicted of this offense.

*A description of Pletcher's claim on appeal*

Pletcher argues that his prosecution for driving under the influence was based on information that was divulged by Clitheroe in violation of federal law.

Clitheroe is a drug and alcohol treatment facility that receives federal funding; as a consequence, Clitheroe is governed by the confidentiality provisions of 42

---

[3] AS 28.35.030(n).

U.S.C. § 290dd-2(a) and the supporting regulations enacted pursuant to 42 U.S.C. § 290dd-2(g).

This federal law protects the privacy of patient information — all records relating to the patient's "identity, diagnosis, prognosis, or treatment".[4] More specifically, § 290dd-2(c) provides that, absent a court order, "no [treatment] record ... may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." *See also* 42 C.F.R. §§ 2.12(a)(2) and 2.12(d).

Pletcher claims that the telephone call from Brie David to the police dispatcher violated this federal law because it amounted to a disclosure of "patient identifying information" without Pletcher's consent.

In particular, Pletcher argues that Ms. David disclosed protected information when (1) she identified herself as a Clitheroe employee; (2) she told the dispatcher that an unnamed intoxicated person had come to Clitheroe; and (3) she gave the dispatcher a description of this person's motor vehicle.

Based on this assertion that the telephone call to the police dispatcher violated federal law, Pletcher then argues that the traffic stop, and his ensuing arrest for driving under the influence, violated federal law as well — because these investigative actions were triggered by the phone call.

And relying on this same argument, Pletcher claims that his indictment by the grand jury, and his later trial in the superior court, violated federal law — both because the grand jury and the trial jury heard evidence that was generated by the initial telephone call, and because the two juries heard the testimony of Clitheroe employees Marx and David.

_____

[4] 42 U.S.C. § 290dd-2(a).

*Why we conclude that the telephone call to the police dispatcher did not violate federal law*

As we have already explained, when Ms. David called the police dispatcher to report the intoxicated driver, she did not identify Pletcher by name, nor did she say that the intoxicated visitor to Clitheroe was a patient or former patient. In fact, the record in this case contained no information identifying Pletcher as a Clitheroe patient until Pletcher's attorney offered this information in support of his motion to dismiss the indictment (on the theory that federal law prohibited the State from prosecuting Pletcher).

Nonetheless, Pletcher claims that the phone call to the police dispatcher violated federal law. In his brief to this Court, Pletcher repeatedly characterizes Ms. David's conversation with the dispatcher as the disclosure of protected "patient identifying information" — which he defines as "any and all information that could reasonably be used to identify an individual ... as [a] substance abuse patient".

But the federal regulations contain a substantially narrower definition of "patient identifying information". As defined in 42 C.F.R. § 2.11, this phrase means "the name, address, social security number, fingerprints, photograph, or similar information by which the identity of a patient can be determined with reasonable accuracy and speed either directly or by reference to other publicly available information."

Of the information that Ms. David gave to the police dispatcher, the only portion that arguably falls within this definition is the license plate number of Pletcher's vehicle (under the theory that this plate number would lead to "other publicly available information" — *i.e.*, Pletcher's vehicle registration — that would reveal his identity).

But even assuming that Pletcher's license plate number was the kind of information covered by the phrase "patient identifying information", this does not necessarily mean that Ms. David's disclosure of this information was prohibited.

Federal law forbids the disclosure of "patient identifying information" only if that information is derived from "[r]ecords [of a federally assisted agency] maintained in connection with the performance of any program or activity relating to substance abuse ... treatment [or] rehabilitation". 42 U.S.C. § 290dd-2(a).

We acknowledge that the pertinent federal regulation contains a broad definition of "records". 42 C.F.R. § 2.11 declares that "records" means "any information, whether recorded or not, relating to a patient received or acquired by a federally assisted alcohol or drug [treatment] program."

But this definition must be understood in the context of the governing statute, 42 U.S.C. § 290dd-2(a). As we have explained, that statute declares that the guarantee of confidentiality applies to records that are related to the facility's *treatment or rehabilitation* of alcohol abusers — records "maintained in connection with the performance of any program or activity relating to substance abuse ... treatment [or] rehabilitation".

According to the evidence in this case, the information about Pletcher's license plate number did not come from Clitheroe's treatment records pertaining to Pletcher — *i.e.*, it did not come from records maintained in connection with "the performance of any [treatment or rehabilitative] program or activity" involving Pletcher. Rather, this information came from Robert Marx's observation of Pletcher's vehicle as Pletcher was preparing to drive away from the Clitheroe parking lot. (Marx relayed this information to Brie David via walkie-talkie, and Ms. David then provided this information to the police dispatcher.) Seemingly, then, the information that Ms. David provided to the police dispatcher was not protected.

But Pletcher argues that the prohibition on disclosure is broader than this. He relies specifically on 42 C.F.R. §§ 2.12 and 2.13 for the proposition that federal law

prohibits disclosure of "*any and all information* that could reasonably be used to identify an individual" as a drug or alcohol treatment patient.

One of the regulations Pletcher cites, 42 C.F.R. § 2.13, contains restrictions on what a treatment facility can and can not say when responding to a request for verification that a particular identified person is (or has been) a patient at that facility. But that is not the issue here.

The other regulation, 42 C.F.R. § 2.12, is more pertinent, because 42 C.F.R. § 2.12(a)(1) contains a more general prohibition on disclosure of patient identifying information. But this prohibition does not cover "any and all information that could reasonably be used to identify an individual", as Pletcher suggests. Rather, § 2.12(a)(1) makes it illegal to disclose information only if that information meets both of the following two criteria:

> (i) [the information would] identify a patient as an alcohol or drug abuser either directly, [or] by reference to other publicly available information, or through verification of such an identification by another person; *and*

> (ii) [the information is] drug ... or ... alcohol abuse information obtained by a federally assisted ... program ... for the purpose of treating alcohol or drug abuse, making a diagnosis for that treatment, or making a referral for that treatment.

This regulation basically recapitulates the law we have already described.

Subsection (i) of the regulation mirrors the definition of "patient identifying information" found in 42 C.F.R. § 2.11. It is limited to information that would identify someone as an alcohol or substance abuse patient either "directly" or "by reference to other publicly available information", or through direct verification by someone other than the patient.

– 9 – 2435

Subsection (ii) of the regulation mirrors the language of the governing statute, 42 U.S.C. § 290dd-2(a). It is limited to information obtained "for the purpose of treating [or diagnosing] alcohol or drug abuse".

And 42 C.F.R. § 2.12(a)(1) declares that information about a patient is protected only if it meets *both* of these criteria.

Returning to the facts of Pletcher's case, Ms. David told the police dispatcher that an unidentified intoxicated person had come to visit Clitheroe, that this person had then decided to leave, and that this person was driving a red and white Land Rover with license plate DNK 265. This information did not fall within the first criterion codified in § 2.12(a)(1); that is, it did not identify Pletcher as a drug or alcohol treatment patient either "directly", or "by reference to other publicly available information", or "through verification of [that] identification by another person".

(Indeed, because the Clitheroe Center at Point Woronzof is a residential treatment facility, David's report suggested that this unnamed person was merely a visitor and *not* a patient in residence at Clitheroe — because, according to David's report, the person had driven to Clitheroe that morning and then had left.)

Moreover, the information that David conveyed to the police dispatcher did not fall within the second criterion of 42 C.F.R. § 2.12(a)(1) either.

Under this second criterion, the ban on disclosure of information that identifies a person as a drug or alcohol abuse patient applies only to "information obtained by a federally assisted [drug or alcohol treatment] program ... *for the purpose of treating alcohol or drug abuse, making a diagnosis for that treatment, or making a referral for that treatment*." The information that Ms. David conveyed to the police dispatcher — the fact that an unnamed person visited Clitheroe that morning, that this person was intoxicated, that he departed in a motor vehicle, and the description of that motor vehicle — was not obtained for any of these purposes.

In sum, Pletcher's argument in this appeal hinges on his assertion that federal law prohibited the Clitheroe employees from disclosing any and all information which, if investigated, might ultimately lead to Pletcher's identification as someone who had received alcohol abuse treatment. But that is not what 42 U.S.C. § 290dd-2(a) says, and it is not what 42 C.F.R. § 2.12(a)(1) says.

When Ms. David called the police dispatcher, she reported a danger to the public safety that was occurring as she spoke — an intoxicated person was driving a motor vehicle away from Clitheroe. But the information Ms. David imparted to the dispatcher did not come from Clitheroe treatment records, and Ms. David did not identify Pletcher as a patient who had received (or was receiving) treatment for alcohol abuse.

We therefore conclude that federal law permitted the disclosure of the information contained in Brie David's telephone call to the police dispatcher. Thus, there was no legal impediment to the police officers' investigation of that information — an investigation which led to the traffic stop, the identification of Pletcher as the driver of the vehicle (when he produced his driver's license), the police observations of Pletcher's intoxication, and the ensuing breath test which showed that Pletcher's blood alcohol level was .180 percent, substantially over the limit.

In his brief, Pletcher makes a cursory argument that AS 47.37.210(a) (one provision of Alaska's codification of the Uniform Alcoholism and Intoxication Treatment Act) guarantees an even greater level of confidentiality than federal law — so that even if the phone call to the police dispatcher did not violate federal law, that phone call nevertheless violated AS 47.37.210(a).

AS 47.37.210(a) declares: "Except as required by AS 28.35.030(d) [a provision relating to persons ordered into treatment as a result of a conviction for driving under the influence], the registration and other records of treatment facilities shall remain confidential and are privileged to the patient." We doubt that this statutory

protection for treatment records was intended to provide greater privacy protection than the federal law we have been discussing. And to the extent that such an argument might be made, we conclude that Pletcher's briefing is inadequate to preserve this claim. [5]

*Why we reject Pletcher's attack on his grand jury indictment*

Pletcher makes a related argument that his grand jury indictment was tainted because the grand jury heard the testimony of two Clitheroe employees, Brie David and Robert Marx.

Pletcher contends that these two witnesses' testimony about "their specific interactions with Mr. Pletcher on Clitheroe's premises" was prohibited by the federal confidentiality law. Indeed, Pletcher argues that the "mere presence" of these two witnesses violated federal law — because the fact that these witnesses worked for Clitheroe might conceivably be used as a link to connect Pletcher to his alcohol abuse treatment. For the reasons explained in the preceding section of this opinion, we reject these arguments.

Pletcher also asserts that David's and Marx's testimony to the grand jury "included direct statements about Mr. Pletcher's treatment", and that these statements were "used to obtain [the] indictment". But Pletcher's brief contains no citations to the record to support these assertions, and we are unable to find any portion of the grand jury record that supports Pletcher's assertions.

We acknowledge (as we did earlier in this opinion) that even though Robert Marx did not identify Pletcher as the person he was describing in his grand jury

---

[5]  *See Katmailand, Inc. v. Lake and Peninsula Borough*, 904 P.2d 397, 402 n. 7 (Alaska 1995); *Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990); *Wren v. State*, 577 P.2d 235, 237 n. 2 (Alaska 1978).

testimony, Marx did mention the fact that the individual in question "was known to us", and Marx implied that he personally had had prior contacts with this individual.

Marx's testimony conceivably raised the inference that the unnamed person in question had previously received treatment at Clitheroe. Later, the grand jury heard Officer Robert Bentler testify that, during the traffic stop, the driver of the vehicle was identified as John Pletcher. The testimony of these two witnesses, in combination, might have allowed the grand jurors to infer that Pletcher was a former substance abuse patient at Clitheroe.

But even if the grand jurors might have inferred that Pletcher was a former Clitheroe patient, we conclude that this information had no appreciable effect on the grand jurors' decision to indict Pletcher.

The question of whether an indictment should be invalidated because the grand jury heard improper evidence is governed by the test announced in *Stern v. State*, 827 P.2d 442 (Alaska App. 1992). Under that test, a court first asks whether, absent the challenged evidence, the other evidence presented to the grand jury was sufficient to justify the indictment. If the remaining evidence was sufficient to justify the indictment, then a court asks whether "the probative force of [the] admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury's decision to indict." *Id.* at 445-46.

Here, Officer Bentler's identification of Pletcher as the driver of the vehicle was based on the information shown on Pletcher's driver's license, not on any information contained in Clitheroe's treatment records. And contrary to Pletcher's argument on appeal, the testimony of Marx and Bentler, even viewed in combination, contained no "direct statements about Mr. Pletcher's treatment".

Nor was any information about Pletcher's alcohol abuse treatment "used to obtain [the] indictment". Pletcher was indicted because the State presented evidence that he was visibly impaired when the police stopped his motor vehicle, that a breath test administered within four hours of this traffic stop showed that his blood alcohol content was .180 percent, and that Pletcher had two prior convictions for driving under the influence within the preceding ten years.

We therefore conclude that, even if the grand jurors might have inferred that Pletcher was a former Clitheroe patient, this information had no appreciable effect on the grand jurors' decision to indict Pletcher, and thus the indictment remains valid.

*Why we conclude that the testimony given at Pletcher's trial did not violate federal law*

In advance of his trial, Pletcher filed motions asking the superior court to prohibit the State from introducing any testimony from Clitheroe employees or from any of the police officers who responded to Ms. David's phone call to the police dispatcher — in essence, a preclusion of the State's entire case. Pletcher argued that all of this testimony would, either directly or indirectly, rest on information that was protected by 42 U.S.C. § 290dd-2.

The superior court denied Pletcher's motions, but the court ruled that, unless Pletcher opened up these areas of inquiry through his cross-examination of these witnesses, no witness would be permitted to testify (1) that Pletcher had been a patient at Clitheroe, or (2) that his demeanor on the day in question deviated from the "normal" demeanor that he displayed during his treatment at Clitheroe. In addition, the superior court expressly limited the police officers' testimony to "recounting the [phone] call they received from ... Brie David describing the vehicle, their stop of [the] Defendant,

administering the field sobriety tests and the results, and administering the breath ... test and its result."

On appeal, Pletcher concedes that all of the trial witnesses abided by the limitations laid down by the superior court. Pletcher argues, however, that even this limited testimony was unlawful. We are about to address Pletcher's arguments individually, but they all rest on the same premise: the erroneous assertion that federal law prohibits the disclosure of any and all information that might conceivably be used as a link to connect Pletcher to his alcohol abuse treatment.

Pletcher argues that when David and Marx identified him as the man who visited Clitheroe on the morning in question, this testimony violated federal law because it revealed that Pletcher had visited a substance abuse treatment center on at least this one occasion. For the reasons we have already explained, we reject Pletcher's argument.

Pletcher also contends that, regardless of the content of their testimony, the "mere presence" of the Clitheroe employees as trial witnesses constituted an independent violation of federal law — because the jury might infer, simply from the fact that David and Marx were Clitheroe employees, that Pletcher had some kind of relationship with the substance abuse treatment facility. We reject this contention as well.

Pletcher also asserts that the testimony of Officer Chris Hovila violated federal law because the officer testified that the call to the police dispatcher came from someone at Clitheroe. Pletcher argues that it was unlawful for the officer to reveal this information because it "linked Mr. Pletcher with a substance abuse treatment facility". We reject this argument.

Finally, Pletcher renews his argument that none of these witnesses should have been allowed to testify at his trial in any fashion, because the entirety of their testimony "constituted the illegal use of protected information". According to Pletcher, the testimony of these witnesses was simply the fruit of prior violations of federal law

— "the culmination of a series of illegal disclosures and illegal uses of protected information".

For the reasons we have already explained, we find no "illegal disclosures" and no "illegal uses of protected information" in Pletcher's case.

*The State's argument that even if 42 U.S.C. § 290dd-2 was violated, suppression of evidence is not the remedy*

In its brief to this Court, the State argues that even if information used in the investigation and prosecution of Pletcher's case was disclosed in violation of 42 U.S.C. § 290dd-2 and its related regulations, Pletcher would not be entitled to suppression of the resulting evidence.

This Court recognized in *Harker v. State*, 637 P.2d 716 (Alaska App. 1981), that it is sometimes appropriate to apply the exclusionary rule to violations of a statute (as opposed to violations of the constitution), and *Harker* sets forth the factors that a court should consider when making this assessment. Under *Harker*, a court must consider (1) whether the statutory requirement or restriction is clear and widely known; (2) whether the statute is primarily designed to protect individual rights, as opposed to being intended more "for the benefit of the people as a whole"; (3) whether admission of evidence obtained in contravention of the statute would require the court to condone "dirty business"; and (4) whether there is evidence that the police have engaged in widespread or repeated violations of the statute. *Id.* at 719. [6]

---

[6]   Compare our decision in *Berumen v. State*, 182 P.3d 635, 641-42 (Alaska App. 2008) (holding that suppression of evidence was a proper remedy for violations of the "knock and announce" statute that are "neither justified by exigent circumstances nor excused under the 'substantial compliance' doctrine") with *Nathan v. Anchorage*, 955 P.2d 528, 532-33 (Alaska App. 1998) (discussing whether suppression of evidence should be the remedy for a violation (continued...)

But because we conclude that federal law was not violated in Pletcher's case, we need not resolve this issue.

*Conclusion*

We conclude that the case against Pletcher was investigated and prosecuted in conformity with federal law protecting the confidentiality of alcohol and drug abuse treatment records. Accordingly, the judgement of the superior court is AFFIRMED.

---

[6] (...continued)
of the Americans with Disabilities Act). *See also Bell v. State*, 668 P.2d 829, 837 (Alaska App. 1983) (holding that untimely notice of a search warrant's execution did not justify the suppression of evidence in the absence of prejudice or bad faith).