Steve J. LOCKWOOD, Appellant,

v.

STATE of Alaska, Appellee.

No. 3356.

Supreme Court of Alaska.

March 9, 1979.

Sue Ellen Tatter, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BURKE, Justice.

This appeal presents two issues. The first is whether information presented to a superior court judge was sufficient to support his issuance of a search warrant. The second is whether in executing the warrant the police violated Alaska's "knock and announce" rule. We hold that there was an adequate showing to justify issuance of the warrant and that the conduct of the police in its execution was lawful.

Following a trial by jury, appellant Steve J. Lockwood was adjudged guilty of possession, with intent to sell, of approximately ten pounds of marijuana. The marijuana was seized when the police, armed with a search warrant, entered room 206 of the Travelodge in Kodiak, Alaska.

The warrant had been issued by Kodiak Superior Court Judge Roy H. Madsen on the application of Sergeant Doyle Oldham,

a Kodiak city police officer. Nearly all the testimony given by Sergeant Oldham was based on information that he had obtained from an unnamed informant. That information was basically as follows: Sergeant Oldham testified that he had received reliable information from a "tested" informant that the informant had observed Lockwood and his co-defendant in possession of thirteen pounds of marijuana. This observation was allegedly made at approximately 5:00 p. m. on Wednesday, May 25, 1976, in room 32 of the Shelikof Lodge in Kodiak. Shortly thereafter the informant returned to the Shelikof, apparently to attempt a purchase of drugs. At that time he was allegedly told by the suspects that they were not going to sell any more drugs at that location as there were police "crawling all over the place." Apparently the police and fire departments had been called when an unknown individual discharged a fire extinguisher in the hotel. At that time another officer saw the suspects leaving the Shelikof with baggage. The other officer, however, was unaware of Oldham's suspicion that they possessed illegal drugs. The officer's observations were reported to Oldham later that night.

The following day, May 26, 1976, the informant told Oldham that the suspects were in room 206 of the Kodiak Travelodge with approximately ten pounds of marijuana that were being weighed and broken down into one-pound parcels for sale. In response to questioning by Judge Madsen, Oldham testified:

Q. Has your informant been to room 206 of the Travelodge?

A. Yes.

Q. And he was in room 32 of the Shelikof Lodge?

A. Yes, twice.

Q. And he's observed the substance?

A. Yes, both times.

Q. Is he aware of what marijuana

. . . . . .

A. Yes, he is.

Q. . . . looks like?

A. Yes, he is.

Q. And how is that established?

A. Personal use.

■ Since Oldham preferred that his informant remain nameless, he vouched for the informant's credibility and the reliability of his information by citing past instances where the informant had given accurate information. For example, he once notified Oldham, four days in advance, of the anticipated arrival of a suspected drug dealer on a particular flight from Seattle. The individual, whose first name and reputation as a dealer were known to the police from other sources, was seen arriving on the specified flight by another police officer. In another incident, a state trooper advised Oldham that one "Mark" was coming to Kodiak aboard a particular vessel, carrying a large quantity of cocaine. Approximately one month later Oldham received exactly the same information from the informant. Although this matter was still under investigation at the time of the hearing on the warrant application, the fact that identical information came to Oldham from separate sources is, we believe, significant in that it tended to lend credibility to the informant's statement.

■ The essence of appellant's attack on the warrant is that no probable cause existed for its issuance because Officer Oldham's testimony failed to show that the informant spoke from personal knowledge or to otherwise establish his reliability. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Erickson v. State, 507 P.2d 508 (Alaska 1973); Davis v. State, 499 P.2d 1025 (Alaska 1972), rev'd on other grounds, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

In Davis we stated:

In determining whether supportive evidence of a crime exists [sufficient to justify the issuance of search warrants], the question to be asked is whether the issuing judge was provided sufficient evidence to make an independent finding of probable cause for the issuance of the warrants. The United States Supreme

Court has suggested that in making this determination on appeal "great deference" be given the findings of the issuing judge, that he not be "confined by niggardly limitations," and that "probability" rather than proof be the standard for probable cause.

499 P.2d at 1028, citing *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Our review of the record in this case, according to that standard, leads us to conclude that the necessary probable cause was sufficiently established to justify issuance of the search warrant.

■ The more troublesome issue is whether the warrant was lawfully executed. The facts in this regard are as follows: Four officers, one in uniform and three in plain clothes, came to the door of room 206 at the Travelodge. Sergeant Oldham, who was in plain clothes, knocked on the door and, in response to a question within the room, used a ruse, stating that he was the manager. According to Oldham there was then a pause after which people could be heard running around inside the room. Norman Brown, appellant's co-defendant in the court below, opened the door three or four inches, at which point Oldham stated that it was the police. Brown attempted to close the door, but Oldham, who already had his foot in the opening, pushed it open and stepped into the room. Once inside, Oldham announced that he was there pursuant to a search warrant.

Appellant contends that such action by the police violated the "knock and announce" requirements of AS 12.25.100 and AS 12.35.040, which operate jointly to establish the procedure required for the lawful execution of a search warrant. *Davis v. State*, 525 P.2d 541, 543 (Alaska 1974). Those sections provide:

AS 12.35.040. *Authority of officer executing warrant.* In the execution or service of a search warrant, the officer has the same power and authority in all respects to break open any door or window, to use the necessary and proper means to overcome forcible resistance made to him, or to call any other person to his aid as he has in the execution or service of a warrant of arrest.

AS 12.25.100. *Breaking into building or vessel to effect arrest.* A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance *after he has announced his authority and purpose.* [Emphasis added.]

Appellant further contends that the "knock and announce" requirement is constitutionally mandated by article I, section 14, and article I, section 22, of the Constitution of the State of Alaska. The former guards against unreasonable searches and seizures while the latter establishes a constitutional right of privacy.

In *Davis v. State*, 525 P.2d 541 (Alaska 1974), we explained the purposes of knock and announce requirements: "(1) to protect the occupant's right to privacy . . .; (2) to safe-guard the police who might be mistaken for prowlers and be shot . . .; and (3) to protect other persons who might be injured by violent resistance to unannounced entries. . . ." *Id.* at 544–45 (citations omitted). In reaching that decision we relied heavily upon federal authority derived from the interpretation of the federal courts of the federal knock and announce statute.

In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), Justice Brennan, in a dissenting opinion joined in by three other justices, stated that under the fourth amendment the police may not intrude unannounced into private homes except

(1) where the persons within ˙ already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Id.* at 47, 83 S.Ct. at 1636, 10 L.Ed.2d at 746. The Supreme Court later adopted these exceptions in *Sabbath v. United States*, 391 U.S. 585, 591 n.8, 88 S.Ct. 1755, 1759, n.8, 20 L.Ed.2d 828, 834 n.8 (1968). In *Sabbath* the Court noted that these exceptions were probably applicable to 18 U.S.C. § 3109, the federal counterpart to Alaska's "knock and announce" statutes.

Other courts have adopted "exigent circumstances" exceptions to the knock and announce requirements similar in most respects to those articulated in *Ker.* Some have also stated that the police need not give the usual notice where "such notice is likely to endanger the life or safety of the officer or other person." *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238, 1241 (1971). *See also State v. Slezak*, 115 R.I. 599, 350 A.2d 605, 606–07 (1976). It has also been held that, once a defendant shows that the police entry was improper, the burden of showing exigent circumstances is on the police. *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir. 1976); *People v. Lujan*, 484 P.2d at 1241.

In California there has developed a "substantial compliance" doctrine, under which technical deficiencies in police performance may be ignored "[w]hen police procedures fail to conform to the precise demands of the statute but nevertheless serve its policies . . . ." *People v. Peterson*, 9 Cal.3d 717, 108 Cal.Rptr. 835, 840, 511 P.2d 1187, 1192 (1973). This rule requires as minimum compliance that the officers identify themselves. *Greven v. Superior Court of Santa Clara*, 71 Cal.2d 287, 78 Cal.Rptr. 504, 507, 455 P.2d 432, 435 (1969). Such identification alone, however, may constitute substantial compliance "only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile." *People v. Rosales*, 68 Cal.2d 299, 66 Cal.Rptr. 1, 3, 437 P.2d 489, 491 (1968).[1] We think the substantial compliance doctrine is sound.

In this case it is apparent that there was not literal compliance with the statutory requirements in that the officer stepped into the room before announcing his purpose. However, we believe that the police conduct here constitutes substantial compliance. It stretches belief to suppose that Brown would have immediately stopped pushing on the door if Officer Oldham had added, after identifying himself as a police officer, that he possessed a search warrant. Brown showed an immediate awareness of the fact that the police were there to demand entry. When his efforts to slam the door were unsuccessful, he and the appellant attempted to run from the officers. Immediately after entering the room and before commencing the actual search, Oldham did announce that he was there to execute a search warrant. Although technically he should have made this announcement before entering, under the circumstances of this case it would not have served the policies of the knock and announce rule to any degree beyond that which was accomplished by the announcement of identity.

For the foregoing reasons, we hold that the officer's execution of the search warrant was lawful.[2]

AFFIRMED.

1. Cases where police officers identified themselves but did not explain their purpose before forcibly entering, in which such conduct was held to be in substantial compliance with the requirements of the knock and announce rule, include *People v. Cockrell*, 63 Cal.2d 659, 47 Cal.Rptr. 788, 792, 408 P.2d 116, 120 (1965), *cert. denied*, 389 U.S. 1006, 88 S.Ct. 568, 19 L.Ed.2d 604 (1967), and *People v. Martin*, 45 Cal.2d 755, 290 P.2d 855, 858–59 (1955).

2. In reaching our decision we find it unnecessary to squarely decide whether the Alaska Constitution contains its own knock and announce requirement, as argued by appellant, since, even if it does, we believe the substantial compliance doctrine should apply and the result would, therefore, remain the same.