**Elizabeth FLEENER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9.**

Court of Appeals of Alaska.

Aug. 17, 1984.

---

Fleur Roberts, Cowper & Madson, Fairbanks, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

At 5:12 a.m. on January 16, 1983, Officer Richard Gressett of the Fort Yukon Police Department received a telephone call from a woman who identified herself as "Betty Fleener and/or Betty Mayo." Fleener told Gressett that she had over five pounds of marijuana in her house and that she wanted to turn herself into the police. Fleener gave Gressett the directions to her house and told him it was the "last house on the street on the right before going out to the base." According to Officer Gressett, Fleener sounded agitated and near hysteria. Officers Gressett and Clark went to the Fleener residence. Gressett stated that when they arrived, he "knocked on the door and heard the same nearly hysterical woman reply that she didn't want to talk" to him, that she wanted him to go away. When it became apparent that Fleener was not going to let Gressett in, Gressett left Clark behind to secure the residence while he went to obtain a search warrant. After the warrant was issued, Gressett returned

to the residence. Together with Officers Clark and Purcell, he discussed how they were going to execute the warrant.

The officers knocked on the door twice and waited for a response. Officer Gressett announced "It's the police." After waiting approximately a minute and getting no response, the officers forced Fleener's door open. Officer Purcell entered wearing a bullet-proof vest, followed by Officer Clark who crawled in on his hands and knees. Officer Gressett stood by the door as backup.

The officers found Fleener lying on the living room floor just inside the door. Once inside, Officer Gressett informed her that they had a search warrant. Fleener had a trashbag filled with marijuana beside her. The police seized the bag of marijuana, which weighed 1,830 grams. In addition, forty-six one-quarter ounce packages of marijuana and 420 grams of hashish were found.

Fleener subsequently filed a motion to suppress evidence based on the grounds that there was insufficient probable cause to issue the search warrant, that no showing was made that a nighttime warrant was necessary, and that the warrant was overbroad. Judge Van Hoomissen denied Fleener's motion. Following a court trial, Judge Van Hoomissen permitted Fleener to make another motion to suppress evidence based on the alleged violation of the "knock and announce" law. This motion was also denied.

Judge Van Hoomissen convicted Fleener of possession of marijuana with the intention of distributing it, in violation of AS 11.71.040(a)(2) (Misconduct Involving a Controlled Substance in the Fourth Degree). This offense is a class C felony. AS 11.71.040(d). Fleener was sentenced to five years with three suspended and five years' probation. She appeals her conviction and sentence to this court. We affirm Fleener's conviction but reverse her sentence.

## THE SEARCH WARRANT

Fleener first contends that the search warrant was not based on probable cause. The affidavit for the search warrant stated:

At approx. 0512 on 1/16/83 this officer (R.E. Gressett) of the Fort Yukon Police Dept. received a call from a woman identifying herself as Betty Fleener and/or Betty Mayo stating that she had over five pounds of "pot" (her word) in her house and that she wished to turn herself into the police. She sounded in near hysteria as she continued on telling this officer specifically where she lived, i.e., last house on the street on the right before going out to the base.

This officer arrived, knocked on the door, and heard the same nearly hysterical woman reply that she didn't want to talk to me and to go away. (The above incident has been recorded.) At that point the local magistrate was notified.

Further, Betty Mayo/Fleener was barred from the local Air Force site for purportedly distributing/selling controlled narcotic substances.

Additionally, the local state trooper, Dan Hickman and myself have been aware for considerable time that Mrs. Fleener/Mayo has been in possession and/or engaged in the sale of controlled substances but have not had until now any legal recourse for a search of the premises. As to Trooper Dan Hickman's and this officer's suspicion of Betty Mayo/Fleener, numerous incidents and information gained confidentially further this officer's belief that illicit controlled narcotic substances are within above named subject's possession and/or residence.

■ The affidavit established that a person who identified herself as Fleener called the police and admitted that she had marijuana in her house. The police went out to the described residence and the officer heard "*the same nearly hysterical woman reply that she didn't want to talk to me and to go away.*" [Emphasis added.] The police thus corroborated that the person who made the admission was the same person who was in the residence. Fleener's statement was also against her own penal inter-

est which itself imparts a significant element of credibility. *See State v. Malkin*, 678 P.2d 1356, 1359 (Alaska App.1984), *petition for hr'g granted*, (Alaska, May 7, 1984); *Hubert v. State*, 638 P.2d 677, 686 (Alaska App.1981). Given the circumstances surrounding Fleener's admission, the magistrate could reasonably find that there was probable cause to believe that Fleener possessed marijuana, as she had reported to the police. We conclude that the magistrate did not err in finding probable cause to issue the search warrant.

Fleener next contends that it was improper for the magistrate to issue a search warrant which allowed a search to be conducted "at any time of the day or night." Alaska Criminal Rule 37(a)(3)(iv) permits a magistrate to authorize a search "at any time" if "an affiant is positive that the property is ... in the place to be searched." Fleener points out that the officer who filled out the affidavit checked the box on the search warrant indicating that he had "reason to believe" that marijuana was present at Fleener's residence, not the box that indicated he was positive. Fleener also contends that the search of her residence was at 6:30 a.m.[1]

Fleener's position appears to be that Officer Gressett, the officer who applied for the search warrant, needed to make a statement stronger than that he had "reason to believe" that the marijuana was present in order to justify a nighttime search. However, in *Johnson v. State*, 617 P.2d 1117, 1123 (Alaska 1980), the court indicated that the word "positive" in Criminal Rule 37(a)(3)(iv) should be construed to mean reasonably certain. The court also stated that an explicit statement that the

affiant was positive of the whereabouts of the property was not required to authorize a nighttime search. *Id.* at 1124. Rather, the *Johnson* court looked to the explicit and detailed nature of the affidavit in concluding that reasonable certainty had been shown. *Id.* at 1123.[2]

■ We therefore apply the reasonable certainty test of *Johnson* to this case. As we have previously pointed out, given the circumstances of Fleener's admission to them over the phone, the police had probable cause to believe that Fleener was in possession of marijuana. When the police had been refused admission to Fleener's house, they staked out the house and immediately sought a warrant. We believe that the probable cause in this case meets the reasonable certainty standard. Furthermore, we note that there were exigent circumstances which justified the magistrate's authorization of a nighttime search. *See State v. Witwer*, 642 P.2d 828, 833 (Alaska App.1982). The marijuana which Fleener possessed was destructible evidence. Fleener was aware that the police knew of her possession of marijuana and that the police had staked out her residence. Given these factors, the magistrate could properly authorize a prompt nighttime search.

Fleener also makes the argument that the warrant authorizing the search of her residence was, on its face, "overbroad in its scope." Fleener contends that the warrant referred "to all checks, records, ledgers and any bookkeeping material," without a showing "to support a finding of probable cause that documents and records of transactions were being concealed at the premises." She also argues that the warrant did

---

**1.** The search warrant itself indicates that it was served at 6:30 a.m. on January 16, 1983. However, the magistrate stated on the record that it was 8 a.m. [on January 16, 1983] when she started to hear testimony to determine whether to issue the search warrant. The state never argued below that the search warrant was not served in the nighttime and the trial court appears to have decided the case on the assumption that the warrant was served before 7 a.m. We normally do not resolve on appeal a contested factual issue which the trial court has not

addressed. *Wortham v. State*, 641 P.2d 223, 225 (Alaska App.1982). For purposes of this opinion, we therefore assume that the search warrant was served at 6:30 a.m. on January 16, 1983.

**2.** "The affidavit is satisfactory if the magistrate could, after reviewing the facts contained therein, be reasonably certain that the items to be seized are at the location to be searched." *State v. Witwer*, 642 P.2d 828, 833 (Alaska App.1982).

not "describe with any particularity the place to be searched."

■ Officer Gressett established probable cause to believe that Fleener was selling marijuana and that Fleener presently possessed over five pounds of marijuana in her home. We believe that these facts would establish probable cause to believe that records of drug transactions would be found in Fleener's home. In context, the warrant authorized the officers to look for records of drug transactions. We believe that this was proper.

Fleener also points out that the warrant authorized the police to search a residence described only as "the Betty Mayo Fleener residence on 3rd Street." Fleener argues that this is not a sufficient description of the place to be searched.

In *Johnson v. State*, 617 P.2d 1117, 1125 (Alaska 1980), the Alaska Supreme Court stated:

The requirement that places to be searched be particularly described is ordinarily said to be met "if the description is such that the officer with the search warrant can, with reasonable effort, ascertain and identify the place intended...." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925). Technical accuracy is not required, and if there is no reasonable probability that the wrong premises will be searched, the description is sufficient. *United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir.1975). The burden of proof on questions pertaining

to the sufficiency of a warrant description is on the challenger. [Footnote omitted.]

Officer Gressett stated in his affidavit that Fleener had given him a detailed description of the location of her house:

She sounded in near hysteria as she continued on telling this officer *specifically* where she lived, *i.e., last house on the street on the right before going out to the base.* [Emphasis added.]

A description such as this could hardly be considered inadequate in a village the size of Fort Yukon. We take judicial notice [3] of the fact that the population of Fort Yukon is 624. Alaska Blue Book, 168 (1983).

Furthermore, Gressett indicated in his affidavit that he had been to the house, "knocked on the door and heard the same nearly hysterical woman reply that she didn't want to talk to me and to go away." Gressett was also the officer who served the warrant. Magistrate Smyth understood that this would be the case at the time she issued the warrant.

■ Given the size of Fort Yukon, the description of the Fleener residence in Gressett's affidavit, and Gressett's personal familiarity [4] with the house to be searched, we conclude that the description of Fleener's house in the warrant was sufficient. There was no reasonable probability that the wrong premises would be searched. *Johnson v. State*, 617 P.2d at 1125.

---

**3.** Alaska Rule of Evidence 201 provides:
*Judicial Notice of Fact.*
   (a) *Scope of Rule.* This rule governs only judicial notice of facts. Judicial notice of a fact as used in this rule means a court's on-the-record declaration of existence of a fact normally decided by the trier of fact, without requiring proof of that fact.
   (b) *General Rule.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
   (c) *When Discretionary.* A court may take judicial notice as specified in subdivision (b), whether requested or not.

   (d) *When Mandatory.* Upon request of a party, the court shall take judicial notice of each matter specified in subdivision (b) if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request.

**4.** In *Johnson v. State*, 617 P.2d 1117, 1125 (Alaska 1980), the court upheld a warrant which contained an inaccurate description of the place to be searched where the officer who served the warrant "was personally familiar with the house to be searched since he had kept watch on it in the past."

## KNOCK AND ANNOUNCE RULE

Fleener next argues that the trial judge erred in denying her motion to suppress which was based on her allegation that the police violated the "knock and announce" requirement in executing the search warrant.[5]

Alaska Statutes 12.25.100 and 12.35.040 operate jointly to establish the procedure required for the lawful execution of a search warrant. *Davis v. State,* 525 P.2d 541, 543 (Alaska 1974). AS 12.25.100 provides:

*Breaking into building or vessel to effect arrest.* A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after he has announced his authority and purpose.

AS 12.35.040 provides:

*Authority of officer executing warrant.* In the execution or service of a search warrant, the officer has the same power and authority in all respects to break open any door or window, to use the necessary and proper means to overcome forcible resistance made to him, or to call any other person to his aid as he has in the execution or service of a warrant of arrest.

Fleener first points out that the officers did not announce their purpose before entering her residence. The "knock and announce" rule requires that the police announce their authority *and* purpose before breaking into dwellings to execute a search warrant. AS 12.25.100. Although Officer Clark testified that Officer Gressett identified the callers as the police, there is nothing in the record to indicate that the officers explained that they were there pursuant to a search warrant before forcing Fleener's door open.

This issue is controlled by *Lockwood v. State,* 591 P.2d 969 (Alaska 1979). In *Lockwood,* four police officers, three of whom were in plain clothes, knocked on the door of a motel room which was to be searched pursuant to a warrant. The occupants apparently asked who was there through the closed door. An officer responded with a ruse, stating that he was the manager. After a pause, one of the occupants peeked out of the door, at which time the officer identified himself. When the occupant attempted to close the door, the officer pushed his way into the room. Only after the officers entered the room did they announce that they were there pursuant to a search warrant. The Alaska Supreme Court adopted the "substantial compliance doctrine" and held that the officers' execution of the search warrant was lawful.

In *Lockwood,* the Alaska Supreme Court adopted two tests to determine whether an announcement of identity alone was sufficient under the "knock and announce" rule.

[I]dentification alone ... may constitute substantial compliance "only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile."

591 P.2d at 972 (quoting *People v. Rosales,* 68 Cal.2d 299, 66 Cal.Rptr. 1, 3, 437 P.2d 489, 491 (1968)).

In analyzing the facts of Fleener's case, we conclude that Judge Van Hoomissen could properly have decided both that the officer's purpose in entering Fleener's residence was clear and that a demand for admittance would have been futile. Fleener was aware that the officers knew that she was in possession of over five pounds of marijuana because she had told them about the marijuana. It is also reasonable to assume that she knew that the police had staked out her residence and that they

---

5. Fleener's motion to suppress on this ground was brought after trial. Fleener argued that the motion could not have been brought sooner because she did not have sufficient information due to the state's failure to provide proper discovery. Judge Van Hoomissen apparently decided this issue on the merits. On this record it is reasonable to assume that Judge Van Hoomissen found that Fleener had an adequate excuse to bring the motion after trial. We accordingly believe that we should resolve this issue on the merits.

were in the process of obtaining authority to search her residence. Given these facts, it was reasonable for the trial court to conclude that Fleener knew the police were at her residence to seize marijuana and that they had now obtained lawful authority to enter. It would also be reasonable for Judge Van Hoomissen to find that the police had concluded that Fleener had refused to admit them before they entered the residence; she had earlier refused to admit them and did not respond to their knock on the door. Reviewing the testimony in the light most favorable to the state, as we are required to do since the state was the prevailing party, more than a minute may have elapsed between when the officers knocked and when they entered. Given the fact that the police knocked on Fleener's door earlier and that she was probably aware they had staked out her house, it was reasonable for the police to infer that Fleener was aware of their presence and was refusing to admit them. We conclude that Judge Van Hoomissen did not err in finding that the police entry was in substantial compliance with the "knock and announce" statutes.

■ Fleener also argues that Judge Van Hoomissen erred in not establishing an exclusionary rule requiring the police to tape-record their entry into Fleener's residence. Fleener cites no authority which would require the police to record their service of a search warrant and we are aware of none. We find no error. *See Harris v. State*, 678 P.2d 397 (Alaska App.1984), *petition for hr'g granted*, (Alaska, May 30, 1984).

### SENTENCE APPEAL

Fleener was convicted, following a court trial, of Misconduct Involving a Controlled Substance in the Fourth Degree, a class C felony. AS 11.71.040(a)(2), (d). Judge Van Hoomissen sentenced Fleener, a first offender, to five years' imprisonment with three suspended, and five years' probation. Fleener appeals this sentence as excessive, based on this court's decisions in *Austin v. State*, 627 P.2d 657 (Alaska App.1981), and *Poggas v. State*, 658 P.2d 796 (Alaska App. 1983).

Under *Austin*, it is clear that Fleener's sentence should not exceed the two-year presumptive sentence for a second felony offender convicted of a class C felony, AS 12.55.125(e)(1), unless her case can be classified as an exceptional one. 627 P.2d at 658. Furthermore, in *Poggas*, we noted that the supreme court had "established a maximum sentence of three years' imprisonment for major commercial dealers in marijuana at least as long as the offense is not aggravated by a significant criminal record or another similarly significant aggravating factor." 658 P.2d at 797.

The supreme court cases which established a three-year maximum sentence for major commercial dealers involved considerably greater amounts of marijuana than is involved in Fleener's case. In *Snyder v. State*, 585 P.2d 229, 234 n. 14 (Alaska 1978), Snyder was engaged in a major commercial transaction where the street value of the marijuana was established at $113,-000. The supreme court recommended that Snyder not be sentenced to more than three years' imprisonment. *Kelly v. State*, 622 P.2d 432 (Alaska 1981) (consolidated appeal reviewing sentences, including Snyder's, for drug sale convictions). In *Wolfe v. State*, 553 P.2d 472, 473 n. 4 (Alaska 1976), Wolfe was also a major commercial dealer who had made two trips outside to import ninety pounds of marijuana. The supreme court approved a sentence of five years with two suspended for Wolfe.

■ The kind of marijuana dealing which Fleener was doing appears to be more similar to the dealing in *Poggas* than to the major commercial dealing which Snyder and Wolfe were engaged in. The evidence showed that Fleener admitted supporting herself selling marijuana and was apprehended in possession of about five pounds of marijuana. Poggas was convicted of selling approximately five and one-half pounds of marijuana worth $3,680. 658 P.2d at 796. Winfield, whose case was consolidated with Poggas' case, was convicted of selling six pounds of marijuana

for $3,000. *Id.* at 797. Neither Poggas nor Winfield had significant criminal records. *Id.* at 796–97. Fleener also has no significant prior criminal record.

We conclude that Fleener's case is in a less serious category than *Snyder* and *Wolfe* where sentences of three years' imprisonment were approved. Her case, in general, appears to be much more like the cases of *Poggas* and *Winfield* where a two-year sentence would be the maximum sentence. *See Poggas,* 658 P.2d at 798. However, we do note that Fleener did admit to selling cocaine in addition to selling marijuana and this is a factor which Judge Van Hoomissen emphasized in imposing sentence. We believe that this factor would justify the court in giving a slightly greater sentence than the two-year sentence which we approved in *Poggas.* However, we do not believe that Fleener, if her probation is later revoked, should be subject to greater than the three-year period of incarceration which the supreme court set as a maximum in *Snyder.* Therefore, we conclude that Fleener's sentence should not have been greater than three years with one year suspended.

The conviction is AFFIRMED. The sentence is REVERSED.