Craig Nicholas **BERUMEN II**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–9711.

Court of Appeals of Alaska.

May 2, 2008.

Allan Beiswenger, Anchorage, for the Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Wishing to serve a warrant for the arrest of Craig Nicholas Berumen II, officers of the Anchorage Police Department knocked on the door of Berumen's hotel room—but they did not announce who they were. (One of the officers later testified that they were hoping that they could gain entry by having "someone ... simply come to the door and answer it.") The officers knocked on the hotel room door for at least twenty seconds, but no one responded to this knocking. The officers then used a hotel pass key to open the door and enter the room. As they began their entry, they announced that they were Anchorage police officers—but they still made no announcement of their authority for entering the room (service of the arrest warrant), and they never asked for permission to enter.

Inside the room, the officers found four persons. The man they were looking for—

Berumen—was asleep. The officers also found marijuana and cocaine in plain sight—which led to Berumen's indictment for third-degree controlled substance misconduct (possession of cocaine with intent to distribute), as well as two counts of second-degree contributing to the delinquency of a minor (because there were two minors in the room with Berumen and the drugs).[1]

Following his indictment, Berumen asked the superior court to suppress the evidence found in the hotel room. Berumen argued that suppression was warranted because the police entered the room in violation of Alaska's "knock and announce" statute, AS 12.25.100. The superior court concluded that the officers had substantially complied with this statute, and therefore the court denied Berumen's motion. Berumen then entered a *Cooksey* plea of no contest, preserving his right to renew his suppression argument on appeal.[2]

We conclude that the officers did not substantially comply with AS 12.25.100. This statute declares that a law enforcement officer is authorized to break into a building to effect an arrest, but only "if the officer is refused admittance after the officer has announced the authority and purpose of the entry".

Here, although the officers identified themselves as police officers, they never announced the authority for, and the purpose of, their entry into Berumen's hotel room. Moreover, the officers never requested or demanded entry into the room. Because of this, no one ever refused them admittance, nor could the officers have reasonably interpreted the lack of response from inside the hotel room as a tacit refusal of admittance.

The remaining question is whether a violation of this statute requires suppression of the resulting evidence.

Recently, in *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), the United States Supreme Court concluded that a violation of the federal "knock and

announce" law does not require suppression of evidence. But the issue before us is one of state law, so the United States Supreme Court's decision in *Hudson* does not bind us. While the majority and dissenting opinions in *Hudson* may have persuasive value, our ultimate duty is to employ the test set forth in *Harker v. State*, 637 P.2d 716, 719 (Alaska App.1981),[3] to independently determine whether a violation of our state statute triggers the exclusionary rule.

For the reasons to be explained here, we conclude that suppression of evidence is the remedy for serious violations of AS 12.25.100—that is, violations that can not be excused under the doctrine of "substantial compliance". Accordingly, we reverse Berumen's convictions.

*Alaska's "knock and announce" statute*

For more than a century, Alaska law has regulated the authority of law enforcement officers to break into a building to effect an arrest. As explained above, AS 12.25.100 is the statute that currently codifies Alaska law on this subject. This statute reads:

> **Breaking into building or vessel to effect arrest.** A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, *if the officer is refused admittance after the officer has announced the authority and purpose of the entry.*

(Emphasis added)

This statute was enacted in 1962 by Alaska's first state legislature: SLA 1962, ch. 34, § 2.11. But the legal rule codified in this statute is much older.

AS 12.25.100 is a direct descendant of an earlier statute that had been in effect since Alaska's territorial government was first created. Section 2397 of the 1913 Compiled Laws of the Territory of Alaska codified essentially the same "knock and announce" requirement that is found in our current statute:

---

**1.** AS 11.71.030(a)(1) and AS 11.51.130(a)(2), respectively.

**2.** *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

**3.** Overruled on other grounds in *Harker v. State*, 663 P.2d 932 (Alaska 1983).

[An] officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute [an arrest] warrant, *if after notice of his authority and purpose he be refused admittance.*

(Emphasis added) Indeed, this same language appears in the very earliest codification of Alaska law—in section 288 of Part II (Criminal Procedure) of the Carter Code of 1900.[4]

In *Davis v. State,* 525 P.2d 541 (Alaska 1974), our supreme court implicitly ruled that the requirements of AS 12.25.100 are broader (*i.e.,* more protective) than the related protection against unreasonable searches and seizures found in Article I, Section 14 of the Alaska Constitution. The supreme court's view of this matter is demonstrated by the fact that, after the court concluded that the police entry in *Davis* was constitutional under Article I, Section 14, the court then declared that a "more substantial question" remained: whether the entry was lawful under AS 12.25.100. *Id.* at 543.

With this as a background, we now turn to the first question presented in this appeal: whether the police violated AS 12.25.100 when they entered Berumen's hotel room.

*Why we conclude that the police violated AS 12.25.100 when they entered Berumen's hotel room, and why we further conclude that the officers' conduct did not amount to substantial compliance with this statute*

As we explained at the beginning of this opinion, when the police went to Berumen's hotel room to serve the warrant for his arrest, the officers simply knocked on his door without announcing who they were. Their apparent hope was that someone would answer the door and allow them in—thus obviating the need for a "breaking". *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (4th ed.2004), § 6.2(b) ("Manner of entry for which notice [is] ordinarily required"), Vol. 3, pp. 332–35.

But no one came to the door or otherwise responded to the officers' knocking, so the officers used a pass key to open the door. This was a "breaking" for purposes of AS 12.25.100.

See *Lockwood v. State,* 591 P.2d 969, 971–72 (Alaska 1979), where our supreme court held that the police triggered AS 12.25.100 by using a ruse to induce a motel occupant to open the door to his room by a few inches, and then having an officer place a foot across the threshold so that the door could not be re-closed. See also the discussion of this point in *LaFave,* § 6.2(b), Vol. 3, p. 332: "Notice is also a usual prerequisite to entry by pass key or by opening a closed but unlocked door...."

See also *State v. Rogers,* 116 N.M. 217, 861 P.2d 258 (App.1993), and *Muñoz v. United States,* 325 F.2d 23 (9th Cir.1963), both holding that entry of a hotel room with a pass key is a "breaking" for purposes of their knock and announce statutes.

AS 12.25.100 declares that police officers are not allowed to break into a building to serve a warrant unless (1) they have announced the authority for, and the purpose of, their entry, and (2) they are refused admittance (either expressly or tacitly).

The State concedes that the officers violated the letter of this statute when they entered Berumen's hotel room. However, the State argues that this violation should be excused because the officers substantially complied with the statute.

In *Lockwood,* 591 P.2d at 972, the Alaska Supreme Court endorsed the doctrine that a technical violation of the knock and announce statute will be excused if the officers demonstrate "substantial compliance" with the statute—that is, if "police procedures fail to conform to the precise demands of the statute but nevertheless serve its policies".[5]

To explain why we conclude that the officers' actions in this case did not amount to

---

4. In fact, this statutory requirement is of even older vintage: the same wording appears in the 1854 Deady Code of the Oregon Territory: "The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant, if after notice of his authority and purpose, he be refused admittance."

(Quoted in *State v. Ford,* 310 Or. 623, 801 P.2d 754, 759 n. 14 (1990).)

5. Quoting *People v. Peterson,* 9 Cal.3d 717, 108 Cal.Rptr. 835, 840, 511 P.2d 1187, 1192 (1973).

"substantial compliance" with the statute, we must draw a distinction between (1) a police officer's act of identifying themself as a police officer and (2) a police officer's act of stating their authority and purpose for entering a building or vessel.

We acknowledge that, in many circumstances, the announcement of an officer's identity and purpose will be tantamount to a statement of their authority—as, for example, when an officer announces, "Police. I have a search warrant." Indeed, several Alaska "knock and announce" decisions—including *Lockwood*—refer to the rule as requiring the police to announce their *identity* and purpose. *See Lockwood,* 591 P.2d at 972; *Hudson v. State,* 792 P.2d 290, 291 (Alaska App.1990); *Sandland v. State,* 636 P.2d 1196, 1197 (Alaska App.1981).

But the mere fact that law enforcement officers come to the door of a dwelling and knock on the door does not, by itself, serve to notify the occupants that the officers have the authority and purpose to force their way in, regardless of the wishes of the occupants—and this remains true even if the officers, while knocking, identify themselves as law enforcement officers.

The Alaska Supreme Court explored this point in *Lockwood.* Under *Lockwood,* if the State is to establish "substantial compliance" with the knock and announce statute, the State must prove, at a minimum, that the police identified themselves as police officers. *Lockwood,* 591 P.2d at 972. But the supreme court further explained that the officers' act of self-identification, standing alone, is not enough to establish substantial compliance with the statute: "[I]dentification alone [will] constitute substantial compliance only if the surrounding circumstances made the officers' purpose clear to the occupants[,] or [if the circumstances] showed that a demand for admittance would be futile." *Id.*[6]

In Berumen's case, the police never announced their authority or purpose for entering the hotel room, nor was there any other circumstance that would have "made the officers' purpose clear to the occupants". Seem-

ingly, then, the State failed to establish substantial compliance under the *Lockwood* test.

Arguing against this conclusion, the State points out that in *Fleener v. State,* 686 P.2d 730, 735–36 (Alaska App.1984), this Court found substantial compliance with the knock and announce statute in a case where the police identified themselves but did not announce their purpose or authority before entering the house to serve a search warrant. However, as this Court explained at length in *Fleener,* our ruling rested on the trial judge's findings that Fleener was in fact aware of the officers' purpose and authority, even without an announcement.

The trial judge found that Fleener was already aware of the officers' presence (they were visibly staking out her house) and already aware of the officers' purpose (to seize her five pounds of marijuana, which she had already told them about). *Id.* at 735. Given these findings of fact, we declared that "it was reasonable for the trial court to conclude that Fleener knew [that] the police were [coming to] her residence to seize marijuana and that they had now obtained lawful authority to enter." *Id.* at 736.

There are no comparable findings of fact in Berumen's case. When the superior court denied Berumen's suppression motion, the court noted that the officers announced their identity as police officers soon after they crossed the threshold, before they fully entered the room. This, the court reasoned, was sufficient to establish "substantial compliance" as defined in *Lockwood.*

■ But as we have just explained, the officers' speedy act of self-identification does *not* satisfy the *Lockwood* test—for there were no circumstances that "made the officers' purpose clear to the occupants". The fact that police officers knock on the door of a dwelling and identify themselves as police officers does not, standing alone, satisfy the knock and announce requirement. The facts of the present case are even less favorable to the State—for the officers did not announce their identity until they were already breaking into the room.

---

6. Internal quotation marks and citations omitted.

■ *Lockwood* requires either proof that the officers announced their authority and purpose or, failing that, proof that the officers at least announced their identity and that the surrounding circumstances independently and adequately communicated the officers' authority and purpose for the entry. The State failed to prove either of these alternatives. Accordingly, the State failed to prove substantial compliance with AS 12.25.100.

*Why we conclude that the exclusionary rule should be applied to violations of AS 12.25.100 when the violation is not excused under the substantial compliance doctrine*

When Berumen's suppression motion was litigated in the superior court, both the parties and the court appear to have assumed that, if the court found a violation of AS 12.25.100, Berumen would be entitled to suppression of the resulting evidence. The parties' superior court pleadings contain no discussion of whether the exclusionary rule applies to violations of this statute.

One reasonable explanation for the parties' failure to discuss this issue is that, in *Davis v. State*, 525 P.2d at 543, our supreme court seemingly resolved this issue. The supreme court stated if a police entry were found to violate AS 12.25.100, "the evidence obtained [as a result] would not be admissible". 525 P.2d at 543.

But now, on appeal, the State argues that the superior court's denial of Berumen's suppression motion can be affirmed on the alternative theory that the exclusionary rule does not apply to violations of AS 12.25.100—so that, even if the police violated this statute, Berumen would not be entitled to suppression of any evidence.

The State concedes that *Davis* apparently mandates suppression, but the State points out that what the supreme court said in *Davis* on this issue is only *obiter dictum*—because the court ultimately concluded that the State had proved substantial compliance with the statute.

The State further points out that the *Davis* court relied on federal case law on this issue—and that, since the time of the *Davis* decision, federal law has changed. As ex-plained earlier in this opinion, the United States Supreme Court has now declared that the exclusionary rule does not apply to violations of the federal knock and announce statute. *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

Berumen, for his part, argues that it is too late for the State to raise this issue concerning the applicability of the exclusionary rule—because the State did not argue this in the superior court.

Berumen also argues—for the first time on appeal—that the Alaska Constitution independently guarantees a person's right to the same type of announcement that is required by AS 12.25.100. Thus, according to Berumen, even if a violation of the statute would not trigger the exclusionary rule, the same facts that give rise to the statutory violation in his case also give rise to a constitutional violation—and the exclusionary rule would apply to this constitutional violation.

■ We disagree with Berumen's contention that it is too late for the State to assert its exclusionary rule argument. In essence, the State is claiming that any error in the superior court's "substantial compliance" analysis is harmless because, as a matter of law, a violation of AS 12.25.100 does not trigger the exclusionary rule.

Berumen cites *Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978), and *Longley v. State*, 776 P.2d 339, 343–44 (Alaska App.1989), for the proposition that claims involving the exclusionary rule are "not appropriately raised for the first time on appeal." But in both of these cases, it was the defendant who argued for the first time on appeal that certain evidence introduced by the State should have been suppressed. That is, the defendants in *Moreau* and *Longley* were asking the appellate court to reverse their convictions based on arguments that were not brought to the attention of the trial courts. Absent plain error, this is not allowed.

■ An appellee, on the other hand, is allowed to argue for affirmance of a trial court's decision on any legal basis revealed by the record—even though the trial court did not consider the appellee's legal theory, or even though the trial court considered and

rejected the appellee's theory.[7]  The State, as the appellee in this case, is therefore entitled to try to defend the superior court's decision by asserting that suppression of evidence is not a proper remedy for a violation of AS 12.25.100.

■ In contrast, Berumen is precluded from pursuing his new argument that the Alaska Constitution independently imposes the same strictures on the police as the ones found in AS 12.25.100.  Absent plain error, an appellant is not entitled to argue for reversal of the trial court's judgement on a basis that was not presented to the trial court.  Moreover, Berumen's constitutional argument is raised for the first time in his reply brief—another basis for rejecting it.[8]

With this as preface, we now turn to the question of whether Alaska law requires suppression of evidence obtained through an unexcused violation of AS 12.25.100.

We agree with the State that our supreme court's statement about this issue in *Davis* is only *dictum*, not binding precedent.  We further agree that, because the supreme court's statement was supported by no analysis, and was premised on federal case law that has now been overturned, the persuasive power of *Davis* on this issue is much diminished.

But the State is wrong when it argues that "[t]he only basis for applying [the] exclusionary rule [to] a violation of AS 12.25.100 is the *dictum* in *Davis*."  This Court's decision in *Harker v. State*, 637 P.2d 716 (Alaska App. 1981), recognizes that it is sometimes appropriate to apply the exclusionary rule to violations of a statute (as opposed to violations of the constitution), and *Harker* sets forth the factors that a court should consider when making this assessment.

■ Under *Harker*, we must consider (1) whether the statutory requirement or restriction is "clear and widely known"; (2) whether the statute is primarily "designed to protect the personal rights" of individual citizens, as opposed to being intended more "for the benefit of the people as a whole"; (3) whether admission of evidence obtained in contravention of the statute would require the court to "condone 'dirty business' "; and (4) whether it appears that the police have engaged in "widespread or repeated violations" of the statute.  *Harker*, 637 P.2d at 719.[9]

The first *Harker* factor points toward application of the exclusionary rule for unexcused violations of the "knock and announce" statute.  The "knock and announce" requirement is both clear and widely known.  It has been a fixture of Alaska law for more than a century, and it has been frequently litigated in appellate cases.

The second *Harker* factor likewise points toward application of the exclusionary rule.  AS 12.25.100 is clearly designed to protect the individual rights of homeowners, hotel room occupants, and others who expect privacy in a building or vessel.

The third *Harker* factor is less clear, but only because the *Harker* court did not explain what it meant by "dirty business".  However, the *Harker* court did say that this phrase was derived from *United States v. Walden*, 490 F.2d 372, 377 (4th Cir.1974).  In *Walden*, the Fourth Circuit's use of the phrase "dirty business" is accompanied by a citation to a passage from *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

*McNabb* was a case that presented the issue of whether a confession should be suppressed because the defendant was kept incarcerated (for the purpose of continued interrogation) in violation of a federal statute that mandated prompt court appearances for all newly arrested criminal suspects.  The Supreme Court held that this violation of the statute required suppression of the resulting

---

7.  *See Torrey v. Hamilton*, 872 P.2d 186, 188 (Alaska 1994); *Demoski v. New*, 737 P.2d 780, 786 (Alaska 1987); *Millman v. State*, 841 P.2d 190, 195 (Alaska App.1992); *Russell v. Anchorage*, 626 P.2d 586, 588 n. 4 (Alaska App.1981).

8.  *See Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 411 (Alaska 1990); *Hitt v. J.B.*

*Coghill, Inc.*, 641 P.2d 211, 213 n. 4 (Alaska 1982); *Charliaga v. State*, 157 P.3d 1053, 1055–56 (Alaska App.2007).

9.  Citing *United States v. Walden*, 490 F.2d 372 (4th Cir.1974).

confession. In the passage cited by the Fourth Circuit in *Walden*, the Supreme Court declared:

> Plainly, a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded [*i.e.*, prompt arraignment of arrested criminal suspects] cannot be allowed to stand without making the courts themselves accomplices in wilful disobedience of [the] law.

*McNabb*, 318 U.S. at 345, 63 S.Ct. at 615.

In the same paragraph of *Harker* that discusses the condonation of "dirty business", the *Harker* court also cites *State v. Danko*, 219 Kan. 490, 548 P.2d 819 (1976). In *Danko*, the Kansas Supreme Court ruled that application of the exclusionary rule to a violation of the Posse Comitatus Act would be inappropriate because the illegality (use of military personnel to perform a search) was almost a happenstance, given the fact that regular police officers were also present who easily could have performed the contested search if they had understood that the Posse Comitatus Act presented any problems. *Danko*, 548 P.2d at 825.

These portions of the *Walden, McNabb*, and *Danko* decisions illuminate what the *Harker* court meant by the condonation of "dirty business". And, in this light, we conclude that the third *Harker* factor also points toward application of the exclusionary rule here.

The police officers in this case violated a longstanding requirement of Alaska law that is designed to protect the privacy and dignity of this state's citizens. On the issue of whether the police must announce their claimed authority and purpose, and on the related issue of whether the police are allowed to break into a building if they have neither sought nor been refused admittance, the statute is written in clear and unambiguous terms. The only exception to the statute's requirements—the "exigent circumstances" exception—has been identified and analyzed in *Lockwood* and in various subsequent decisions issued by this Court, and the State concedes that this exception does not apply to the facts of Berumen's case.

Under these circumstances, the words of the Supreme Court in *McNabb* are likewise applicable to Berumen's case: the evidence found in the hotel room was "secured through such a flagrant disregard" of the procedure specified by the Alaska legislature that it "cannot be allowed to stand without making the courts themselves accomplices in [willful] disobedience of [the] law."

Finally, the fourth *Harker* factor points toward application of the exclusionary rule. The fact that there are several Alaska appellate decisions that discuss the meaning and application of AS 12.25.100 suggests that this issue comes up more than occasionally in criminal litigation. And yet, despite this, it appears that police officers may not be paying sufficient attention to this statute. During the evidentiary hearing in this case, one of the officers could not remember that one of the reasons for the "knock and announce" statute is to protect citizens' privacy, and a second officer testified that he had no idea why the officers failed to abide by the requirements of the statute when they entered Berumen's hotel room. Given this history and this record, we cannot ignore the possibility that there may be widespread or repeated violations of the statute.

■ In sum, we conclude that all four of the factors mentioned in *Harker* support the application of the exclusionary rule to violations of AS 12.25.100 that are neither justified by exigent circumstances nor excused under the "substantial compliance" doctrine.

*Conclusion*

For the reasons explained here, the superior court should have granted Berumen's suppression motion. The judgement of the superior court is REVERSED and, pursuant to the *Cooksey* plea agreement negotiated by the parties, the superior court is directed to dismiss the charges against Berumen.