STATE of Alaska, Petitioner,

v.

Ezial AVERY, Respondent.

No. A–9961.

Court of Appeals of Alaska.

July 17, 2009.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Petitioner.

Glenda J. Kerry, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

COATS, Chief Judge.

In February and March of 2005, Ezial Avery was in jail awaiting trial on charges that he kidnapped and sexually assaulted his wife. At that time, Avery was subject to a court order which prohibited him from contacting his wife. In spite of the court order, Avery telephoned his wife from the jail on numerous occasions and tried to persuade her to not testify against him in front of the grand jury.

The Department of Corrections routinely records inmates' telephone calls. When the police learned that Avery had been contacting his wife, they obtained a warrant that authorized them to obtain and listen to the recordings of the telephone calls Avery had made to his wife. Based on these telephone calls, a grand jury indicted Avery on one count of first-degree tampering with a witness (for inducing or attempting to induce a witness to testify falsely or offer misleading testimony).[1] Twelve counts of unlawful contact in the first degree (for contacting V.Q. in violation of the court order) were added by information.[2]

Avery moved to suppress the telephone recordings. He argued that the State had violated his rights under the United States and Alaska Constitutions when it recorded his telephone conversations without a warrant. Superior Court Judge Michael L. Wolverton granted Avery's motion to suppress. The State petitioned for review. We granted the State's petition, and we now reverse the superior court's ruling.

*Factual and legal background*

Alaska Statute 33.30.231(c) requires the Department of Corrections to monitor the phone calls of prisoners in whatever manner the Commissioner determines is appropriate:

> [I]n order to preserve the security and orderly administration of the correctional facility and to protect the public, the commissioner shall monitor or record the telephone conversations of prisoners.... The monitoring or recording may be conducted on all calls or selectively or in some other limited manner as determined by the commissioner to be appropriate.

(The statute specifically exempts telephone calls between an attorney and a prisoner, as well as calls between the Office of the Ombudsman and a prisoner.)[3]

As we have already noted, the Department of Corrections routinely records inmates' telephone calls (except those to an attorney or the Ombudsman). Signs posted above the prisoner telephones warn that "telephone calls may be monitored and recorded." In addition, each prisoner phone call is preceded by an auditory warning that "this phone call may be monitored and recorded."

However, at the time the Department of Corrections recorded Avery's phone calls, there was a Department of Corrections policy in effect, Policy 810.01, which declared that "calls of prisoners ... who have [not] been convicted of a crime may only be monitored and recorded when authorized by court order." This policy was adopted in 2002. Apparently, by 2005, when Avery's telephone calls were recorded, the Department was no longer following this policy, but it had not been formally rescinded.

The only witness to testify at the evidentiary hearing on Avery's suppression motion was the security sergeant from the Anchorage jail. He testified that all prisoners' telephone calls (with the exception of calls to lawyers, members of the Legislature, or the Ombudsman) were recorded for security reasons. The sergeant stated that he had no knowledge of Policy 810.01. (Policy 810.01 was revised on May 22, 2007 to provide that "all calls may be monitored and recorded at any time.")

*Judge Wolverton's ruling*

In his decision, Judge Wolverton relied in part on Policy 810.01 as the justification for suppressing Avery's telephone calls. Because Avery had not yet been convicted at the time his calls were recorded, Judge Wolverton concluded that Policy 810.01 prohibited the Department from recording Avery's calls. Judge Wolverton also stated that, because prisoners are "presumed to know the rules of the jail," Avery should be presumed

1. AS 11.56.540(a)(1).

2. AS 11.56.750.

3. AS 33.30.231(c) ("A recording of a telephone call made under this subsection shall be kept confidential, and access to the recording and its contents is limited to persons who are acting

within the scope of their official duties and whose access to specific recordings has been authorized by the facility superintendent. A telephone call between an attorney and a prisoner or between the office of the ombudsman and a prisoner may not be monitored or recorded except when authorized by a court.").

to be aware of Policy 810.01. Thus, the judge concluded that Avery "had [both] a subjective and objective expectation of privacy in his phone calls at the Anchorage Correctional Center."

Moreover, Judge Wolverton concluded that the warrantless recording of Avery's telephone calls violated not only Policy 810.01, but also "[Avery's] privacy rights under the Alaska and United States Constitutions." He therefore granted Avery's motion to suppress.

*Why we reverse Judge Wolverton's ruling*

■ To prevail under the search and seizure clauses of the United States and Alaska Constitutions, Avery must show (1) that he had an actual subjective expectation of privacy, and (2) that his expectation of privacy was one that our society "is prepared to recognize as 'reasonable.'" [4] Thus, even if we accepted Judge Wolverton's conclusion that Avery had a subjective expectation of privacy in his phone calls from jail, we would still have to determine whether Avery's expectation of privacy was one that our society is prepared to recognize as reasonable.

Avery's expectation of privacy in his phone calls from jail would not be considered reasonable under the Fourth Amendment to the United States Constitution. In *Bell v. Wolfish,*[5] the United States Supreme Court examined the constitutional rights of pretrial detainees in the context of a class action lawsuit. The prisoners in *Wolfish* had challenged certain prison rules as violative of their First, Fourth, and Fifth Amendment Rights: (1) a rule prohibiting inmates from receiving books from anyone other than a book club or publisher; (2) a rule prohibiting

inmates from receiving packages containing food and personal property; (3) a rule prohibiting inmates from observing searches of their rooms; and (4) a rule requiring prisoners to submit to body-cavity searches after every contact visit.[6] The Supreme Court concluded that all of these regulations were reasonable.

■ The Supreme Court reaffirmed the principle that prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." [7] But the Court also emphasized that "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." [8] In other words, "[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual." [9] The Court noted that the maintenance of institutional order, discipline, and security are essential goals in correctional facilities and concluded that "even when an institutional restriction infringes a specific constitutional guarantee ... the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." [10] Finally, the Court held that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." [11]

■ Applying these principles, the Supreme Court held in *Wolfish* that even the highly invasive practice of body-cavity searches did not violate the prisoners' Fourth Amendment Rights because the searches

---

4. See *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring) ("My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"); see also *State v. Glass*, 583 P.2d 872, 875 & n. 9 (Alaska 1978) (applying Justice Harlan's articulation of the rule in *Katz* under Alaska law); *Smith v. State*, 510 P.2d 793, 797 (Alaska 1973) (same).

5. 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

6. *Id.* at 530, 99 S.Ct. at 1869.

7. *Id.* at 545, 99 S.Ct. at 1877.

8. *Id.* at 545, 99 S.Ct. at 1877.

9. *Id.* at 546, 99 S.Ct. at 1878.

10. *Id.* at 547, 99 S.Ct. at 1878.

11. *Id.*

were not unreasonable under the circumstances.[12] The Court noted that the test of reasonableness requires, in each case, "a balancing of the need for the particular search against the invasion of personal rights that the search entails."[13] Accordingly, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[14] The Court, after "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates," concluded that the body-cavity searches were reasonable.[15]

Several years later, in *Hudson v. Palmer*,[16] the Supreme Court stated:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> . . . .
>
> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal

order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.[17]

Based on these precedents, it seems clear that the United States Supreme Court would uphold the monitoring and recording of telephone calls at issue in this case. Moreover, lower federal courts have consistently upheld the right of a penal institution to record inmate telephone calls.[18]

Avery, however, also contends that the recording of his telephone calls was unreasonable under the Alaska Constitution.[19] The Alaska Constitution's search and seizure provision (article I, section 14) is more protective than the Fourth Amendment to the United States Constitution.[20] But we doubt that the Alaska Supreme Court would find that Avery had a reasonable expectation of privacy in his telephone calls from jail.

As we explained earlier, AS 33.30.231(c) authorizes the monitoring of prisoners' telephone calls "to preserve the security and orderly administration of the correctional facility and to protect the public." In *Larson v. Cooper*,[21] our supreme court declared that "[p]rison security is a compelling governmental interest," and thus limitations on prisoners' freedoms would generally be upheld if they were rationally related to this interest.[22]

---

**12.** *Id.* at 558–60, 99 S.Ct. at 1884–85.

**13.** *Id.* at 559, 99 S.Ct. at 1884.

**14.** *Id.*

**15.** *Id.*

**16.** 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

**17.** *Id.* at 526, 104 S.Ct. at 3200.

**18.** *See, e.g., United States v. Amen,* 831 F.2d 373, 379–80 (2d Cir.1987) ("[P]rison inmates have no reasonable expectation of privacy. In the prison context the reasonableness of a search is directly related to legitimate concerns for institutional security. If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to mon-

itor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored." (citations omitted) ); *United States v. Gangi,* 57 Fed.Appx. 809, 815, 2003 WL 191367 (10th Cir.2003) ("We agree with the Ninth Circuit that 'any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls.'" (quoting *United States v. Van Poyck,* 77 F.3d 285, 291 (9th Cir.1996)) ).

**19.** *See* article I, section 14 & article I, section 22.

**20.** *Woods & Rohde, Inc. v. State, Dep't of Labor,* 565 P.2d 138, 150 (Alaska 1977).

**21.** 90 P.3d 125 (Alaska 2004).

**22.** *Id.* at 129.

We conclude that the monitoring of prisoners' telephone calls is rationally related to the goal of prison security. The witness at Avery's evidentiary hearing (the security sergeant at the Anchorage jail) testified that this monitoring is conducted to ensure that prisoners do not make plans to escape, or smuggle drugs or weapons into the facility, or threaten or harass witnesses. Thus, the monitoring authorized by AS 33.30.230(c), with its codified exceptions for telephone calls to attorneys and government officials, is at least presumptively constitutional.

Moreover, in *City & Borough of Juneau v. Quinto*,[23] the Alaska Supreme Court held that when a person "is aware, or reasonably should be aware, that he or she is speaking to a police officer who is in the process of executing either a lawful arrest or a lawful investigative stop," society is not prepared to recognize as reasonable an expectation that the conversation will not be surreptitiously recorded.[24] In the present case, Avery was not speaking directly to law enforcement or corrections officials, but the circumstances clearly placed him on notice that his telephone conversations were not private. As we explained earlier, signs were posted above the prisoner telephones, warning inmates that their "telephone calls may be monitored and recorded." In addition, every call at issue in Avery's case was preceded by the auditory warning that "this phone call may be monitored and recorded."

For these reasons, we reject the superior court's conclusion that the warrantless recording of Avery's telephone calls violated Avery's rights under the Fourth Amendment to the United States Constitution or under article I, section 14 of the Alaska Constitution. The recording of Avery's phone calls is consistent with these constitutional provisions. Moreover, the monitoring was authorized by AS 33.30.230(c).

Therefore, if the recording of Avery's telephone calls was illegal, it was illegal only because it violated Department of Corrections Policy 810.01. The remaining question is thus whether the exclusionary rule should be applied to violations of an executive agency's written policies.

In *Berumen v. State*,[25] we set out factors to consider in determining whether to apply the exclusionary rule in cases where a government officer violated a statute.[26] These factors are: (1) "whether the statutory requirement ... restriction [was] 'clear and widely known;'" (2) whether the statute was primarily enacted to protect the rights of individual citizens rather than to generally benefit society; (3) whether admission of the evidence would make courts accomplices to the willful disobedience of the law; and (4) whether the police have engaged in "widespread or repeated violations" of the statute.[27]

In the present case, as we have pointed out, there was no violation of a statute. Rather, Alaska statutory law expressly authorizes the recording of all inmates' telephone calls. Avery's claim does not rest on any violation of this statute, but rather on a violation of a related provision of the Department of Corrections's procedural manual, Policy 810.01.

Further, the testimony at the evidentiary hearing in Avery's case supports the conclusion that Policy 810.01 was not "clear and widely known." The only witness who testified at that hearing, the security sergeant at the Anchorage jail, stated that he was not aware of this written policy, and that the Department's actual practice was to record all inmates' phone calls. It thus appears that, if the Department engaged in misconduct, it was in failing to amend Policy 810.01 to conform to the Department's actual practices.

Under these circumstances, we conclude that the violation of Department of Corrections Policy 810.01 does not justify the application of the exclusionary rule. For this

23. 684 P.2d 127 (Alaska 1984).

24. *Id.* at 129.

25. 182 P.3d 635 (Alaska App.2008).

26. *Id.* at 641.

27. *Id.* (quoting *Harker v. State*, 637 P.2d 716, 719 (Alaska App.1981), *modified by* 663 P.2d 932, 934–35 (Alaska 1983)).

reason, the superior court erred when it granted Avery's suppression motion.

*Conclusion*

The order of the superior court granting Avery's motion to suppress is REVERSED, and this case is remanded to the superior court for further proceedings on the indict-ment. We do not retain jurisdiction of this matter.